376 So.2d 1230 (1979)
Robert PETERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 77-2715.
District Court of Appeal of Florida, Fourth District.
December 5, 1979.
*1231 Richard L. Jorandby, Public Defender, Tatjana Ostapoff and Sara Bresky Blumberg, Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Glenn H. Mitchell, Asst. Atty. Gen., West Palm Beach, for appellee.

ON REHEARING
SCHWARTZ, ALAN R., Associate Judge.
Peterson was found guilty of the delivery of both heroin, as charged in Count I of the information, and cocaine, as charged in Count II. We reverse the judgment and sentences entered against him upon the verdict because the prosecutor's final argument to the jury was so thoroughly and pervasively improper that it irremedially destroyed the defendant's fundamental right to a fair trial.
The charges against Peterson arose from two drug transactions which occurred within a few minutes of each other on March 22, 1977. On that date, a black male who identified himself as "Pop" allegedly sold quantities of cocaine, and then heroin, to undercover Broward County Sheriff's Officer James Giglia. Although two other officers were in the vicinity at the time,[1] they were unable to identify "Pop," and both the sales themselves and the issue at the trial, which was solely that of identity, were essentially "one-on-one" situations. Giglia testified that Peterson was "Pop." Peterson took the stand and denied it, stating that he had sold no drugs to Giglia and that he had never seen him before.
The testimony of the witnesses, which thus presented the rather simple issue of which of the two was either mistaken or not telling the truth was short and quite uneventful. The conclusion of the trial was decidedly neither. For the prosecutor seized upon the case to render what amounted to a short course in improper final argument:
(1) During the opening portion of his argument, the prosecutor stated the following:
Now you hear about, `Go for the pushers,' this and that. This isn't possession; this isn't possession of marijuana or some pills by some high school kids. This is sale of heroin, sale of cocaine, and this is a case that was done in the only way that it could be done by a police officer, trained, that had to go undercover, that had to go down into the dirt, into the slime with the pushers, deal with them at their level, and to bring the case to court. This is the way you have to do it. This is the only way that you can do it, and it's *1232 up to you as jurors to tell them whether or not they should continue. Basically that's what it gets down to.
The narcotics agent comes in here and tells you, `I went out and made a deal. He sold me heroin. I had my two men surveilling me,' and the defense brings in two people who say he was dressed like this, he did come back, he was driving this van.
That's what the job is about. That's what your duty is about, because you can't tell any drug pushers, particularly heroin pushers, to go out and do it. They're not going to sell to policemen on the streets in uniform. They're not going to sell in front of department stores. They're not going to sell on video tape. They're going to sell down and dirty, one on one situations. That's what we have here.
It is self-evident that the defense in this case was not that it was all right to sell narcotics but rather that Peterson had not done so. Thus, it is equally clear that the prosecutorial references to "pushers," much less to the "slime" in which they dwell, were entirely improper. Porter v. State, 347 So.2d 449 (Fla. 3d DCA 1977); see also Glantz v. State, 343 So.2d 88 (Fla. 3d DCA 1977); Reed v. State, 333 So.2d 524 (Fla. 1st DCA 1976); Brown v. State, 284 So.2d 453 (Fla. 3d DCA 1973). The statements that the jury was to decide the question of whether pushers "should continue ... to go out and do it" are, if anything, even more so. Sims v. State, 371 So.2d 211 (Fla. 3d DCA 1979); Porter v. State, supra, Glantz v. State, supra; Chavez v. State, 215 So.2d 750 (Fla. 2d DCA 1968).
(2) Less than half a page in the transcript later, the assistant state attorney argued:
You watched the officers. You heard them testify. Now think of the surveillance officer. Talk about truthfulness; talk about being candid. Did they come in and say, `That's the guy. I remember. I'll never forget his face, that dirty rat?' They didn't say that.
What did they say? `We were about 50, a hundred yards away, trying to keep surveillance, trying to give protection if needed.' They had an emergency radio in the van.
`Did you see the guy's face?' `No, we couldn't see the face.' They know it was this guy. They see the guy sitting here; this is the guy that's on trial, but they took an oath to the Court. They took an oath to tell you the truth.
`Did you see the guy's face?' `No, we didn't see his face. We saw his clothes. We say him get in, saw that it was the same guy that was later arrested. Giglia was there doing the deal.'
MR. JORDAN: Judge, I would object, and would like to approach the bench.
(Thereupon the following conference was had between Court and counsel at the bench and out of the hearing of the jury.)
MR. JORDAN: Judge, at this point I would object to the State's comment and move for a mistrial. There is no evidence. He has insinuated the surveillance people know that this is the guy.
* * * * * *
THE COURT: I will deny the motion for mistrial. I think that you have said enough. [e.s.]
We agree with the appellant that this argument constituted an improper reference to the purported extra-testimonial knowledge of the surveillance officers as to the identity of the offender which was not only not in evidence but was directly contrary to what was. See Silvestri v. State, 332 So.2d 351, 355 (Fla. 4th DCA 1976), affirmed, 340 So.2d 928 (Fla. 1976); Carter v. State, 332 So.2d 120 (Fla.2d DCA 1976); United States v. Leon, 534 F.2d 667 (6th Cir.1976).
(3) After defense counsel's argument to the jury, in which he vigorously attacked Giglia's credibility and stated that his testimony alone was insufficient to establish Peterson's guilt under our system in "America," the prosecutor's rebuttal surpassed even himself:
This is America. That's how America gets abused. That's why it's in the shape *1233 it is in today, because we have to put up with stuff like that, guys like that.
He told you about it. You heard America. All we have is 17 hits of heroin. `Go ahead and sell it, sell it to whoever you want to sell it to, 17 injections of heroin.'
Yes, this is America. Let's attack the cops some more. Let's talk about that. Let's talk about the defendant's defense here in America.
You know what we're going to do? At the end of the trial I'm going to take two jurors and go back in the jury room, okay, and I'm going to take a gun, and I'm going to kill one of the jurors, okay, and then when that second juror comes out and takes me to trial 
MR. JORDAN: [public defender] Judge, I am going to object to this.
MR. GELETY:  I'm going to get on the stand and say I didn't to it, I deny it.
MR. JORDAN: Judge, I would like to approach the bench.
THE COURT: The argument should be confined to the testimony as it has been in the record and reasonable comment thereon.[2]
MR. GELETY: Judge, this will tie in.
The point of this story is what he's telling you is this: All they had was one witness; let him go. All they had was one witness; one witness is not enough. This is the United States. One witness is not enough.
Think about the next time you are walking alone at night. Think about how many witnesses you need.
They have to come in here, and if they have a story about an alibi, or if they have a story about being tricked into it, or if they didn't know it was drugs, that's one thing; but when they have to come in here and attack the police officers that were in on this, that testified to you, that had to go out there and risk their lives, their safety and well-being to buy drugs to enforce the narcotics laws to stop the pushers from selling cocaine and heroin, and they have to come to court and be attacked by these cheap ideas, that's America, too, what we have to put up with today and throughout the country with drugs. [e.s.]
Beyond reiterating, with emphasis, the prior prejudicial references (a) to the heinousness of the offense involved, (b) to the "pushers" who commit it, and (c) to the danger of the jury's permitting heroin to be sold "to whoever you want to sell it to," this portion of the argument introduced a new impropriety. The appeal to the jurors to place themselves in the position of the state's sole witness  the supposed "victim" of the crime involved  was an entirely unjustified "golden rule" argument of a type which has been universally condemned. E.g., Adams v. State, 192 So.2d 762 (Fla. 1966); Lucas v. State, 335 So.2d 566 (Fla. 1st DCA 1976). Indeed, in simultaneously making one juror a victim and another juror a witness to the same "crime," counsel seems to have plumbed depths never before presented in the decided cases.
(4) The final entry in this mail order catalogue of prosecutorial misconduct occurred in the penultimate paragraph of the argument:
Not only do they have to get into these disguises and crawl down there and deal with people like this, but they have to deal with people like his lawyer and be attacked and slandered through the whole thing, and they have to do this in front of a jury.
This tasteless personal reference to the defendant and to his attorney as well was perhaps the most offensive remark of all. See Carter v. State, 356 So.2d 67 (Fla. 1st DCA 1978); cf. Johnson v. State, 351 So.2d 10 (Fla. 1977).
Before this Court, the State, as it could not, makes no real defense of the prosecutor's argument itself. It strongly contends, however, that defense counsel failed below properly to preserve any objections *1234 to that argument and therefore that its demonstrated improprieties may not result in a new trial. We do not agree. It is true that much, even most of the argument went entirely unobjected to at trial; that the only motion for a mistrial was made as a result of what was probably the least prejudicial of counsel's statements;[3] and that the only other objection[4] was not accompanied by a motion for mistrial or a request for a cautionary instruction. But we need not consider whether the errors preserved by the single mistrial motion and the single additional objection would be sufficient in themselves to require reversal.[5] This is so because we are convinced beyond question that the contents of the final argument, taken as a whole, were such as utterly to destroy the defendant's most important right under our system, the right to the "essential fairness of [his] criminal trial." Dukes v. State, 356 So.2d 873, 874 (Fla. 4th DCA 1978). Thus, the record presents fundamental error, error which reaches into the very heart of the proceeding, and which would therefore mandate a new trial even in the total absence of timely preservation below. 3 Fla.Jur.2d Appellate Review, §§ 300-301 (1978). Specifically, it is well established in Florida that when, as here, references in argument during a criminal trial are "of such character that neither rebuke nor retraction may entirely destroy their sinister influence ... a new trial should be granted, regardless of the lack of objection or exception." Ailer v. State, 114 So.2d 348, 351 (Fla. 2d DCA 1959), and cases cited. Our Supreme Court's holding in Pait v. State, 112 So.2d 380, 385 (Fla. 1959) is directly applicable:
The general rule is that an alleged error based on improper argument to the jury will not be considered by an appellate court unless a timely objection was registered in the trial court. Rogers v. State, 158 Fla. 582, 30 So.2d 625; Carlile v. State, 129 Fla. 860, 176 So. 862. However, when an improper remark to the jury can be said to be so prejudicial to the rights of an accused that neither rebuke nor retraction could eradicate its evil influence, then it may be considered as ground for reversal despite the absence of an objection below, or even in the presence of a rebuke by the trial judge. Florida Appellate Rules 3.7(i) and 6.11, subd. a, 31 F.S.A. Cooper v. State, 136 Fla. 23, 186 So. 230; McCall v. State, 120 Fla. 707, 163 So. 38; Simmons v. State, 139 Fla. 645, 190 So. 756; Carlile v. State, supra. Certainly, the better practice is to bring the matter promptly to the attention of the trial judge. Defense counsel has the duty to remain alert to such things in fulfilling his responsibility to see that his client receives a fair trial. Except in rare instances where a grievous injustice might result, this court is not inclined to excuse counsel for his failure in this regard. We think the remarks here fall within the exception.
The State contends, however, that all of these cases have been rendered obsolete by the Supreme Court's later decision in Clark v. State, 363 So.2d 331 (Fla. 1978). We do not believe that Clark has that effect.[6] In Clark, the Court did hold that a contemporaneous objection and motion for mistrial were required to preserve error in a reference to the defendant's invocation of his Fifth Amendment rights. But this conclusion was explicitly based upon the finding that such a reference was not fundamental error. The Court stated at 363 So.2d 333:
In Bennett [v. State, 316 So.2d 41 (Fla.)] we announced that the error complained *1235 of was of constitutional dimension and warranted reversal without consideration of harmless error, but we have consistently held that even constitutional errors, other than those constituting fundamental error, are waived unless timely raised in the trial court. Sanford v. Rubin, 237 So.2d 134 (Fla. 1970). `Fundamental error,' which can be considered on appeal without objection in the lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action. An improper comment on defendant's exercise of his right to remain silent is constitutional error, but it is not fundamental error. Cf. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
In view of our determination that the error involved here "goes to the foundation of the case," the Clark opinion, which states that such error "can be considered on appeal without objection in the lower court" actually provides additional support for our conclusion.[7] At the very least, there is nothing in Clark which suggests that the prior decisions, including Pait v. State, supra, which have been cited have been overruled. See State ex rel. Garland v. West Palm Beach, 141 Fla. 244, 193 So. 287, 298 (1940). We would need much clearer evidence than the Clark opinion provides to reach the conclusion that we are required to affirm despite the contrary demands of our judicial conscience that no verdict or judgment which followed the prosecutor's argument in this case should be permitted to stand.
The record suggests that it is necessary again to iterate and emphasize the statement of Judge Cross, speaking for this Court in Kirk v. State, 227 So.2d 40, 42-43 (Fla. 4th DCA 1969):
It is also the duty of a prosecuting attorney in a trial to refrain from making improper remarks or committing acts which would or might tend to affect the fairness and impartiality to which the accused is entitled. Tribue v. State, Fla. App. 1958, 106 So.2d 630. The prosecuting attorney in a criminal case has an even greater responsibility than counsel for an individual client. For the purpose of the individual case he represents the great authority of the State of Florida. His duty is not to obtain convictions but to seek justice, and he must exercise that responsibility with the circumspection and dignity the occasion calls for. His case must rest on evidence, not innuendo. If his case is a sound one, his evidence is enough. If it is not sound, he should not resort to innuendo to give it a false appearance of strength. Cases brought on behalf of the State of Florida should be conducted with a dignity worthy of the client.
The judgment under review is reversed and the cause remanded for a new trial.[8]
REVERSED AND REMANDED.
BERANEK, J., and DAUKSCH, JAMES C., Jr., Associate Judge, concur.
NOTES
[1] A "confidential informant" was also present, but the defendant's pre-trial motion to reveal his identity was denied and he did not testify. See note 8, infra.
[2] This ruling of the trial court did not sustain the objection and instead erroneously suggested that the prosecutor's remarks were indeed "reasonable comment" on the testimony. See Price v. State, 267 So.2d 39, 40, n. 1 (Fla. 4th DCA 1972).
[3] The reference to the knowledge of the surveillance officers, the portion of the argument treated in paragraph (2), supra.
[4] The objection came in the middle of the "golden rule" argument discussed in paragraph (3), supra.
[5] But see note 2, supra.
[6] Since the writer was the author, ironically also while sitting as an associate judge of this Court, of the opinion in Bostic v. State, 332 So.2d 349 (Fla. 4th DCA 1976) which was quashed in Clark, this entire subject is approached only with great trepidation, or, as some might say, extreme temerity. See also the expression referred to in Mims v. Mims, 305 So.2d 787, 789, n. 1 (Fla. 4th DCA 1975).
[7] It should be pointed out that the essential reason for the requirement in Clark for a motion for mistrial is to prevent defense counsel from abiding the result of the trial and then seeking an automatic reversal if the defendant is convicted. Since, under Bennett v. State, a mistrial is required if moved for, the failure to do so is properly deemed to reflect a conscious decision that counsel is satisfied with the present trial and therefore constitutes an effective waiver of the right to another. In this case, by unsuccessfully moving for a mistrial, defense counsel did at least affirmatively indicate that he was not so pleased with the way things were going that he preferred to take his chances as to the outcome of the trial and that he instead desired a new one.
[8] The requirement of a new trial in this case renders moot the defendant's other appellate contention that the identity of the confidential informant should have been disclosed. See note 1, supra. Before the retrial, the trial court should conduct an in camera hearing concerning the c.i. and order disclosure only if his testimony would be material and valuable to the defense. State v. Williams, 369 So.2d 416, 418 (Fla. 3d DCA 1979).