449 So.2d 313 (1984)
Tyrone JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 83-9.
District Court of Appeal of Florida, Fifth District.
March 22, 1984.
Rehearing Denied May 2, 1984.
James K. Freeland, of James K. Freeland, P.A., Orlando, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
SHARP, Judge.
Tyrone Bernard Jones raises two arguments to overturn his convictions for carrying a concealed firearm[1] and culpable negligence.[2] He first argues the evidence concerning his identity as the perpetrator of the crimes was insufficient. We do not *314 think Jones preserved this point on appeal because he failed to specify it as a basis for his motion for acquittal[3] or for new trial.[4] Jones also argues that the prosecutor's closing arguments were improper and deprived him of a fair and impartial trial. Despite the fact that most of the remarks were not objected to, in view of the weak case presented against Jones we cannot view the prosecutor's improper arguments as harmless, and we reverse for a new trial. Pait v. State, 112 So.2d 380 (Fla. 1959); Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980).
The charges against Jones arose out of a shooting incident in the Altamonte Shopping Mall. A black male came out of the Jeans West Store and began struggling with a couple, Daisey and Dwight Riles, attempting to take their baby. He then pulled out a handgun and fired at Dwight. The bullet hit the wall, ricocheted and injured several bystanders. The man with the gun went back into Jeans West where a store clerk led him out the back exit.
The testimony concerning Jones' identity as the man who fired the gun was borderline, at best. The couple with the baby did not testify. One eyewitness to the incident identified Jones, but she said she could not be certain "beyond a shadow of a doubt." A shopper in Jeans West identified Jones also, but she had previously identified another man as being the person who exited Jeans West, and she later said she was not sure about identifying Jones. The defense witnesses, the shop clerk at Jeans West, and Jones himself, testified Jones was not the man. Jones' girlfriend corroborated Jones' statement that he was not at the shopping mall when the incident occurred. The shop clerk identified the man with the gun solely as "Mr. T," a person different from Jones.
It is clear that the prosecutor felt Jones had procured, through threats or otherwise, the absence of the victims at trial, and the silence of the shop clerk. No evidence of this was presented at trial, however, and it was therefore improper for the state to make such an argument.[5] The prosecutor argued on closing that Jones had manipulated the judicial system and made "chumps" out of the jury and judicial officers:
How did he do it? I'll tell you how he did it. One, who are the witnesses who were announced in the beginning? I said Daisey Riles might be a witness, Dwight Riles might be here and a number of other people. Where [sic] they here? Now you heard the testimony where are those two people? They're up in Georgia. The court told you that Count II which was the count of battery against Dwight Riles, that was dropped. The court did not dismiss the other two counts. You realize that Dwight Riles couldn't be here to testify with Daisey Riles. They're up in Georgia. Who helped load the truck? Mr. T.
* * * * * *
Think about whether this is total manipulation of a man, especially Donald Feeley [the shop clerk] let him out the back door. People do not leave from the back door. He must have been intimidated because he knew he was armed. If he was intimidated there, he could be intimidated here.
In an effort to bolster his case, the prosecutor alluded to or stated his personal beliefs in Jones' guilt and the veracity of the state's witnesses including the following:
Mrs. Regets [the shopper in Jeans West], again, is one of the most honest people... . . Donald Feeley, you've heard from Donald Feeley. He lied to you.... What about Tyrone Jones? I submit, that when Tyrone Jones took the stand, he lied to you... . Why didn't anyone come forward and say so? They didn't *315 for the same reason as everybody protecting him, the reason, because he intimidates them.
These comments are improper and inappropriate. United States v. Rodriguez, 585 F.2d 1234 (5th Cir.1978); Cummings v. State, 412 So.2d 436 (Fla. 4th DCA 1982); see Fla.Bar Code Prof.Resp., D.R. 7-106(C)(4).
The combination of the prosecutor's improper comments and argument and the state's tenuous case against Jones convinces us that on balance Jones did not receive a fair and impartial trial, Peterson, and that fundamental error occurred. Wilson v. State, 294 So.2d 327 (Fla. 1974). Unlike our sister court,[6] we have not noted a flood tide of improper prosecutorial comment and argument in our district. This is one of the first cases we have reversed on these grounds. Generally prosecutions in our district are fairly and professionally handled. With a word of warning in the form of this case, we trust that it will continue to be the pattern in our district.
REVERSED AND REMANDED FOR NEW TRIAL.
DAUKSCH, J., and SCOTT, R.C., Associate Judge, concur.
NOTES
[1] § 790.01(2), Fla. Stat. (1981).
[2] § 784.05(2), Fla. Stat. (1981).
[3] Sanderson v. State, 390 So.2d 744 (Fla. 5th DCA 1980).
[4] Mancini v. State, 273 So.2d 371 (Fla. 1973).
[5] Wilson v. State, 294 So.2d 327 (Fla. 1974); Pait v. State, 112 So.2d 380 (Fla. 1959); Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980); Simmons v. Wainwright, 271 So.2d 464 (Fla. 1st DCA 1973).
[6] Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982).