457 So.2d 1084 (1984)
Patricia Marie RYAN, Appellant,
v.
STATE of Florida, Appellee.
No. 83-201.
District Court of Appeal of Florida, Fourth District.
September 19, 1984.
*1086 Bennie Lazzara, Jr., of Bennie Lazzarra, Jr., P.A., Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and James P. McLane, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Patricia Marie Ryan was tried by jury and convicted of possession of cocaine and sentenced to five years in prison. She was also convicted of engaging in a criminal offense with weapons and sentenced to 15 years of probation. She appeals. We reverse and remand for a new trial because of prosecutorial misconduct which constituted harmful error under the concepts of State v. Murray, 443 So.2d 955 (Fla. 1984).
Appellant asserts, and we agree, that she was denied a fair trial as a result of the improper and inflammatory comments made by the State Attorney during closing argument. As a preliminary matter, we point out that the prosecuting attorney and the appellate attorney for the state were not the same person.
Briefly, the facts are as follows: Appellant is a member of a well-to-do Palm Beach County, Florida family. The alleged criminal offenses took place at her father's ranch, the Diamond T, in Martin County, Florida.
On March 1, 1981, appellant, a licensed realtor, went out to a building on the Diamond T called the "big house" for the alleged purpose of showing the ranch to some buyers. That same day, Tilton, an off-duty deputy, noticed a low flying, twin engine plane passing several times over the back property of the Diamond T. The plane aroused Tilton's suspicion. He notified the sheriff who came out to the Diamond T and set up a surveillance. At that time, the sheriff observed two vehicles exiting from the back of the property. As soon as the vehicles left the ranch, they were stopped and searched by the sheriff. One vehicle contained parachutes, packages of cocaine, and guns, the other contained two air-to-ground radios, a walkie-talkie, a ham radio, and guns.
After the drivers and passengers were arrested, Officer Murphy spotted appellant's car leaving the "big house" and then quickly returning. Murphy approached appellant and arrested her. She claimed that she had returned to lock up the house because the prospective buyers did not show up. No cocaine or weapons were found in appellant's possession. At that time, Officer Murphy discovered David Deroscher exiting out the back of the "big house" and arrested him.
Deroscher turned out to be the State's star witness. His trial testimony revealed Robert Bogue as the leader of the drug drop operation. No direct evidence against appellant was elicited from Deroscher.
Because appellant was not in actual possession of the cocaine or the weapons, she was tried as an aider and abettor. The evidence used to convict appellant was purely circumstantial. We do not deny that a conviction can stand on circumstantial evidence alone. Navarro v. State, 262 So.2d 729 (Fla. 3d DCA 1972). Instead, we point out that in a close case, such as the one at hand, particularly careful attention must be given to improper prosecutorial comments. Thompson v. State, 318 So.2d 549 (Fla. 4th DCA 1975), cert. denied, 333 So.2d 465 (Fla. 1976).
As a general rule, improper prosecutorial remarks can constitute reversible error when such remarks may have prejudiced and influenced the jury into finding the defendant guilty. Grant v. State, 194 So.2d 612 (Fla. 1967).
The Florida Supreme Court recently expounded upon this issue in Murray, supra. Justice Shaw, speaking for the Court stated:
[P]rosecutorial error alone does not warrant automatic reversal of a conviction *1087 unless the errors involved are so basic to a fair trial that they can never be treated as harmless. The correct standard of appellate review is whether "the error committed was so prejudicial as to vitiate the entire trial." Cobb, 376 So.2d at 232. The appropriate test for whether the error is prejudicial is the "harmless error" rule set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and its progeny. We agree with the recent analysis of the Court in United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The supervisory power of the appellate court to reverse a conviction is inappropriate as a remedy when the error is harmless; prosecutorial misconduct or indifference to judicial admonitions is the proper subject of bar disciplinary action. Reversal of the conviction is a separate matter; it is the duty of appellate courts to consider the record as a whole and to ignore harmless error, including most constitutional violations.
Id. at 956.
After having reviewed the record and having applied the harmless error rule pursuant to Murray, we find the remarks made by the prosecutor during closing cannot be considered harmless and demand a reversal.
Appellant argued that the prosecutor's improper comments fell into the categories of 1) appeal to bias, passion and prejudice; 2) personal attacks upon defense counsel; 3) commenting on facts not in evidence; 4) law enforcement officers believed the defendant guilty; and 5) comment on defendant's failure to testify. We reproduce them here with our notes, headings, legal analysis, and supplied emphasis.

1) Appeal to Bias, Passion, and Prejudice
The prosecuting attorney adopted, as a trial strategy, a rich versus poor theme which permeated the entire context of his final argument. As these comments illustrate, the prosecutor constantly emphasized the fact that appellant came from money and her attorney was an outsider from a big city:

But the rich get preferential treatment. She was not handcuffed on the way to jail, just as any one else would be treated. Her Palm Beach lawyer boyfriend comes up and wants the money back and they give that back, because she comes from money, and unconsciously people tend to be subservient. And we are asking you not to be subservient to money.

... .

But we have shown that a rich person's daughter did do this. We have shown that a rich person's daughter didn't have much money herself. Maybe Daddy had to work for his money, way back when, but the children ought to not live up to their parent's potential. You've seen that before. Why should she, when Patty Ryan can go out and make hundreds of thousands of dollars, according to Carter Osleber, in this, why should she toil like everyone else?

... .
Now, will the truth surface? Will you people do something that later in your lives you'll regret? Will you listen to the man from Tampa, and he can go back to Tampa, and we can all still live here in this community; and he says, "let her go. Let her walk out the door, because the State's case is not there." That this is all figments of someone's imagination. Are you going to do that?
The man from Tampa is appellant's attorney, Mr. Lazzara. This last comment is indicative of the prosecutor's attempt to alienate appellant from the Martin County jury.
At the time of this trial much publicity was circulating concerning cocaine and the life-in-the-fast-lane mode of living adopted by some Palm Beach residents. As indicated by the statement below, the prosecutor attempted to persuade the jury that appellant fitted into that jet-set scene. It is interesting to note that the record reveals appellant and her family were from West *1088 Palm Beach not Palm Beach as the prosecutor suggests.
There's been a lot of publicity recently about the lifestyle in Palm Beach and some of you may find it interesting, but I think it proves a point. When you come from a rich family  and it's hard to live up to what your parents have shown, or your parents have been able to achieve  and you can either try to repeat and do as well as your parents did, or you can try to cheat and get there through quick means. That's what's wrong with this whole society today. Nobody wants to work for their money. Everyone is out to get rich quick. Patricia Ryan found a quick way to make money. That's all she's tried to do.
And also there tends to be this excitement. It's life in the fast lane with cocaine. You've seen Time Magazine covers, I'm sure you've heard about it on T.V. It's an exciting drug. Movie stars take it. Movie stars get killed by taking it. It rules people's lives, but it's also exciting.
In continuing the "rich" theme, the prosecutor attacked appellant's family and attempted a creative link between her and Patricia Hearst.
The defense brings with him a whole flange of people, half of which have never even been identified. I don't know who they are. Maybe you do. And they packed the courtroom with family members, to try  again, it's an intimidation move to show  or they're trying to impress you that rich will win out; that because she's rich or that her parents are rich, that that is going to affect your decision.

... .
There was a trial not too long ago, that you may recall, that involved another Patty, another rich Patty. Another rich Patty whose parents wanted to buy a fancy attorney to deal with the case and to hope to float some ridiculous defense to the jury. Her name was Patricia Hurst. [sic] The jury didn't buy that one, did they?
MR. LAZZARA: Your Honor, I'm going to object to this line of argument. I don't know what relevancy it has and it's improper argument, and I believe I'll object to it on those grounds.
THE COURT: It's just argument. I told the jury before what the lawyers say isn't evidence it's just argument. It's just there to help you, if you see fit to accept it, but you can reject it. I'll overrule the objection.
No doubt spurred on by the trial judge's seeming acquiescence of his trial tactics, the prosecutor continued his prejudicial attack.
And I call on Mr. Lazzara, in his closing, to tell us the evidence they're relying on. Don't tell us what the family wants him to say ... but we're not going to let you ruin our State and our community; until the jury is able to do that, we're going to get nowhere.

So, this case is definitely on your conscience, ladies and gentlemen. Your decision  and you've seen the numbers of the news media out there and the precautions taken so that you wouldn't be influenced. Why? Because it's a big case for that reason.
Will this group tell the community they felt that the defendant had guilty knowledge of what was going to transpire? Or will they get caught up in words, like the Hinckley jury, and do something that later they regretted, because they felt they were confused.
... .

Tell us, tell the community, that Patricia Ryan is guilty and that you're not going to let her go back to Palm Beach and thumb her nose at small Martin County and say, "Well, we really pulled one over those guys. Can you believe that?" It's on your conscience.
These comments were not only in poor taste and unprofessional, but also highly inflammatory. The comments pitted Martin County jurors against a Palm Beach County defendant in such a way as to make *1089 the juror's impartiality most unlikely. Additionally, it was unfair and improper for the prosecutor to have characterized appellant as a rich, manipulative, fast woman where the sterotypical classifications were not derived from testimony of witnesses but rather from the prosecutor's own prejudicial characterizations. "There is no reason, under any circumstances, at any time for a prosecuting attorney to be rude to a person on trial; it is a mark of incompetency to do so." Green v. State, 427 So.2d 1036, 1038 (Fla. 3d DCA), pet. for rev. denied, 438 So.2d 834 (Fla. 1983).
Some of the more disturbing comments in this category are those which ask the jury not to set appellant free into the community; not only because she's a liar but because she's rich and will thumb her nose at "small Martin County." These comments are very similar to the prosecutorial comments condemned in Davis v. State, 214 So.2d 41 (Fla. 3d DCA 1968). Arguments which beseech the jury to convict a defendant for any reason except guilt are highly prejudicial and are strongly discouraged.

2) Personal Attacks on Defense Counsel
Aside from referring to Mr. Lazzara as a fancy attorney and out-of-towner, the prosecutor accused him of not being totally honest with the jury.
I call upon Mr. Lazzara to be honest with you and to be open with you and to say, "Yes, these people were involved, but no, my client wasn't." But he's playing hide-the-ball.
... .
So any argument by the attorney from Tampa that tries to say, "Well, she didn't know it was cocaine," again, as he said in his opening statement, that is not being honest with you, and it doesn't matter under the law.
... .
He talked about the money, it's no big deal. Twenty-six hundred dollars in twenty dollar bills. Maybe in Tampa and maybe in Palm Beach, this is no big deal. But on a Sunday afternoon to be carrying this type of money? But again, we should just dismiss that. We shouldn't even consider it. In fact, if you recall, every item of evidence was objected to. Every item of evidence was objected to. If our case was so weak, if we had nothing, what was Mr. Lazzara afraid of?
MR. LAZZARA: Your Honor, I'm going to object to that line of argument. It's totally improper and the Court's instruction will explain that. I object to him arguing in that regard.
THE COURT: Well, I've already told the jury at the outset that it's the attorney's obligation to object when they feel there is a legal objection, and they should not speculate on why an objection was made or what was going to be said, so I won't repeat that, other than I've just done.
Resorting to personal attacks on the defense counsel is an improper trial tactic which can poison the minds of the jury. Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980).

3) Commenting on Facts Not in Evidence
The following statements are deemed to be impermissible comments on facts not in evidence.
What type of real estate agent, again, is going to show people like Robert Bogue  you saw what Robert Bogue looked like, and Humberto; a couple of hooligans dressed in casual clothes  a million-dollar property and not suspect anything was wrong.
The above quote refers to appellant as the realtor.
Bogue was not a witness at the trial and the jury saw no photographs of him. The following prosecutorial remark concerns hearsay which was not allowed at trial.
This is Jake Valley, who owned the plane. This is Jake Valley, that when Jay King and Detective Lockwood went out to interview him, he tricked them into *1090 saying, "Well, I'll meet you at such and such an address," and when they go there that's a law office. And the attorney says, "He'll answer two questions." Now, isn't it a coincidence that Jake's number is inverted the same way that Pat's number is inverted.
Next the prosecutor made the unsubstantiated comment that the Diamond T had been used for other drug drops.
You got Robert Bogue being out at the Diamond T. Ranch. The ranch that Detective Murphy had said had been used repeatedly for drug drops. We have Robert Bogue there on Thanksgiving. We have him there on Super Bowl Sunday. And we have him there finally on the Sunday that this case happened.
The State made no attempt to explain or justify these comments. It is improper to refer to extra-testimonial facts during a final argument. Unsubstantiated statements which concern references to other crimes committed by a defendant are particularly condemned by the Florida courts.
When statements or intimations are made by a prosecuting attorney in his argument to a jury that an accused has committed other crimes than that for which he is on trial, this constitutes error unless there is evidence in the record from which the jury could infer the commission of another crime by the accused. Simmons v. State, 1939, 139 Fla. 645, 190 So. 756, 758.
Ailer v. State, 114 So.2d 348, 351 (Fla. 2d DCA 1959); see also Glassman v. State, 377 So.2d 208 (Fla. 3d DCA 1979); Fitzgerald v. State, 227 So.2d 45 (Fla. 3d DCA 1969). The statement concerning the numerous other drug drops at the ranch can certainly be interpreted as meaning appellant had knowledge of and perhaps participated in those illegal activities. The record does not reveal proof of the other drops or appellant's possible involvement.

4) Law Enforcement Officers Believe Appellant was Guilty
The comments set forth below impermissibly suggest that the State of Florida feels that appellant was guilty and would not have wasted time and money prosecuting the case if she was not guilty. The prosecutor is also taking it upon himself to vouch for the State's evidence.
And Sheriff Holt and Jay King, you've heard their testimony. They're sitting over there. Do you think that they would bring this to you and have the State spend its time and money if there wasn't evidence that they wanted you to consider? So, there's common sense. Common sense has to be used here.
See Buckhann v. State, 356 So.2d 1327 (Fla. 4th DCA 1978), and United States v. Phillips, 664 F.2d 971 (5th Cir.1981).

5) Comments on Appellant's Failure to Testify
Below are the comments which we believe could be reasonably interpreted as a failure of appellant to testify.
But we're asking you  she is telling you that she's not guilty of these crimes, and we're telling you, from the evidence, that she had participation.
... .
You're here to determine whether she is guilty or whether she's not guilty, and innocent like she is claiming.

... .
What would reasonable people say about that? They'd say, "That's not true. She's lying."

... .
The pilot had to make a connection with the defendant, for some reason that we will never know at this trial, the pilot had to call Patty Ryan.
The general rule used in determining whether or not a prosecutor's statements are impermissible comments on appellant's failure to testify is set forth in the oft-cited case of Trafficante v. State, 92 So.2d 811 (Fla. 1957).
[O]ur law prohibits any comment to be made, directly or indirectly, upon the failure of the defendant to testify. This is true without regard to the character of *1091 the comment, or the motive or intent with which it is made, if such comment is subject to an interpretation which would bring it within the statutory prohibition and regardless of its susceptibility to a different construction.
Id. at 814.
Constantly referring to the appellant as actually "lying," "claiming" or "telling" the jury something is sure to be construed as an improper comment on her failure to testify no matter how subtle the innuendo. Shepard v. State, 436 So.2d 232 (Fla. 3d DCA 1983).
At this point it is necessary to discuss the nature and sufficiency of defense counsel's objections to the prosecutor's misconduct. Defense counsel objected twice during the State's closing argument and at the end objected again and moved for mistrial. However, he failed to object to many of the egregious prosecutorial comments.
Although prosecutorial misconduct can amount to reversible error the defense counsel must object to the improper comments and move for mistrial at least at the end of the state's argument in order to preserve the error for appeal; Clark v. State, 363 So.2d 331, 333 (Fla. 1978); State v. Cumbie, 380 So.2d 1031 (Fla. 1980).
However, if the improper comments rise to the level of fundamental error, then multiple objections are not necessary. Peterson, supra.
"Fundamental error," which can be considered on appeal without objection in the lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action.
Clark at 333.
When does prosecutorial misconduct amount to fundamental error and thus become an exception to the contemporaneous objection and motion for mistrial rule? When the prosecutorial argument taken as a whole is "`of such a character that neither rebuke nor retraction may entirely destroy their sinister influence ... a new trial should be granted, regardless of the lack of objection or exception.'" Peterson at 1234, citing Ailer, supra.
Mr. Lazzara indicated in the appellant's brief that because of the trial judge's response to the objections he did make and because of the general atmosphere of the trial, he felt continuous objections would have a detrimental effect on appellant's case. We recognize that at the trial level an attorney is in the best position to interpret the atmosphere and then determine what trial strategy will be most effective and proper. However, when it becomes apparent that the prosecutor may be prejudicing the jury, it is paramount for the defense counsel to preserve the error for appeal by making timely objections.
We hold that the comments made during the State's closing argument were of such a prejudicial magnitude as to amount to fundamental error. As a result, appellant was denied a fair trial. In a close case, such as the one at hand, where the jury is walking a thin line between a verdict of guilt and innocence, the prosecutor cannot be allowed to push the jury to the side of guilt with improper comments such as these. We do not intend this opinion to frustrate prosecutorial zest or inhibit the State in preparing trial strategy. We only point out that over zealousness in prosecuting the State's cause can work against justice, rather than for it.
We do not find it necessary to reach the other issues raised on appeal. However, one other point raised by appellant has merit. Appellant argues that the prosecutor was allowed to rehabilitate the State's star witness, Deroscher, before his credibility had been attacked.
During direct examination, the prosecutor questioned Deroscher in the following manner concerning a pretrial statement made to the defense counsel.
Q Okay, and during that statement did he ask you a lot questions about the case?
A Yes, he did.
Q Quite in-depth?
A Yes sir.

*1092 Q And did you tell him the complete truth during that statement?
A No sir, I don't believe I did, no.
Q Did you tell some things in that statement that were in fact outright lies or not  or not the entire truth?
A Yes, I did.
Q And what did you tell him to the best of your recollection that was not true? I know it's a lengthy statement but do you remember any part of it?
MR. LAZZARA: Your Honor, I'm gonna object to him impeaching his own witness here. I don't think that is proper, I think that is proper cross examination and I intend to go into the lies that he told me in that statement and I don't think he can do it now.
THE COURT: Well, I'll overrule the objection.
MR. KIBBEY: Thank you, Your Honor.
BY MR. KIBBEY:
Q Do you recall any of the parts of your statement, David, in which you told the defense attorney that were in fact not true?
A The fact that Patty had asked me if I had heard a plane. The fact that she had picked up the walkie-talkie and the fact that I had heard her call the code names.
Q With reference to those three areas what did you tell him about it?
MR. LAZZARA: Your Honor, I  I'd have a continuing objection to that line of questioning.
THE COURT: Well, I don't recognize continuing objections cause it puts the burden upon me to know when to object. No, I'll  I'll  you make the objections.
MR. LAZZARA: Then I object to that question, I'm sorry.
THE COURT: Okay, I'll overrule the objection.
BY MR. KIBBEY:
Q Do you understand the question as to those three areas? What  what did you tell him during your deposition?
This is clearly impeaching one's own witness in contravention of Section 90.608(1)(a), Florida Statutes (1983).
The State attempts to justify this line of questioning by claiming that the prosecutor was not impeaching Deroscher but instead, explaining the prior statement. The State, in anticipating defense counsel's use of the prior inconsistent statement to impeach Deroscher, turned the tables by confronting him with the statement first. Deroscher was then given the chance to "explain" his untruthfulness by showing that he was concerned for the safety of his family due to the threatening phone calls. While it may not have been the prosecutor's specific intention to attack Deroscher's credibility, the prosecutor's questions had the effect of impeaching Deroscher in one breath by showing the inconsistent statement, and in the next breath, rehabilitating Deroscher by allowing him to explain the reason he lied. Not only does this scramble the orderly procedure laid out by the Florida Rules of Evidence, but it robs the defense counsel of an important strategic tool used in cross-examination, that of impeachment of a witness through the use of prior inconsistent statements. Reese v. State, 382 So.2d 141 (Fla. 4th DCA 1980).
Accordingly, we reverse the judgment and sentence and remand for a new trial.
REVERSED AND REMANDED.
HERSEY and GLICKSTEIN, JJ., concur.