603 So.2d 581 (1992)
William WORDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 91-00228.
District Court of Appeal of Florida, Second District.
July 17, 1992.
*582 James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant was convicted of first degree murder and aggravated child abuse for beating his nine-month-old son, Jonathan, to death. He argues in this appeal that the court should have either acquitted him because of the lack of evidence against him or should have granted a mistrial based on the prosecutor's misconduct. He also raises two evidentiary issues. We affirm.
In July of 1988, appellant was living with his wife, Amy, and his nine-month-old son, Jonathan. Since he was not working, he took care of Jonathan while his wife worked. On July 25, 1988, Amy fed Jonathan a bottle in the morning and went to work at about 1:00 or 1:30 p.m. Jonathan seemed normal. At 4:00 p.m. that afternoon, paramedics responded to appellant's call. Appellant said he had left the child alone in the bathtub while he hung out clothes in the backyard and that the child had drowned.
Medical experts testified at trial that the child died from rapid cerebral edema, a swelling of the brain that occurs rapidly and causes death within a few hours of the initial injury. Further medical examinations revealed healing fractures to the child's tibia, radius and clavicle, in addition to severe facial bruising. A number of witnesses testified to specific instances of appellant's hostility and violent behavior toward the child.
In moving for a judgment of acquittal, appellant admitted all the above facts adduced and every conclusion favorable to the state that was reasonably inferable from them. Lynch v. State, 293 So.2d 44 (Fla. 1974). Unless there was no view that the jury could lawfully take of the evidence that was favorable to the state, the trial court had to deny appellant's motion. Lynch. That was simply not the case here.
Since there was no direct evidence that appellant hit Jonathan during the two hours prior to his death, the state had to rely upon circumstantial evidence to prove its case against him. Although a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence, this is a question for the jury to determine. Once the jury has made its determination, it will not be reversed on appeal if there is competent, substantial evidence to support it. State v. Law, 559 So.2d 187 (Fla. 1989). We find that the record contains competent, substantial evidence that supports the jury verdict.
Appellant's hypothesis of innocence was that either a combination of blows killed Jonathan or Jonathan's mother struck the final fatal blow. Based on the evidence presented, the jury could lawfully find that appellant struck the final blow that killed Jonathan. The experts agreed that Jonathan died as the result of rapid cerebral edema. The majority of expert witnesses estimated that the fatal blow or blows occurred no more than two hours before death and that Jonathan would have begun exhibiting observable effects soon after the fatal blow or blows. Yet, Jonathan acted normally on the day before his death and during the morning of the day he died when his mother was with him.
Appellant also argued that the evidence failed to prove that he possessed the requisite intent. Although we agree with appellant that the evidence did not show that he had the required intent to be found guilty of premeditated murder, we believe that the evidence supported a finding of intent to commit aggravated battery, the *583 underlying felony used here to find appellant guilty of felony murder. Given the extensive evidence of recent abuse, there was no possibility that appellant intended only to strike Jonathan and not hurt him seriously. See Morris v. State, 557 So.2d 27 (Fla. 1990). Jonathan sustained injuries comparable to the force and impact of a serious car crash. Appellant cannot credibly argue that he did not intend to do serious bodily harm.
On the facts and inferences presented at trial, we believe that the jury could and properly did find that appellant not only struck the final blow or blows, but also had the required intent. The state is not required to rebut every possible variation of events, but only to introduce competent evidence that is inconsistent with appellant's theory of the case. Law. We believe that the state met its burden here.
Appellant also argues that the court improperly allowed the HRS protective investigator, Dorothy Corrigan, to testify about her interview of appellant. On July 29, 1988, Corrigan and Detectives Phyllis Davis and Charles Calhoun interviewed appellant. Corrigan took notes of the interview and tried to take down everything verbatim. Since she could not remember everything she had written down, she was allowed to read her notes to the jury. Appellant maintains that this was hearsay that did not fall under any exception and that, in light of the insufficiency of the evidence against him, the error was not harmless. We disagree.
Hearsay, as observed by the trial court, is an out-of-court statement offered for its truth. The questions propounded and statements of the detectives were not offered for their truth, but were offered to place appellant's answers in context. For that reason, the questions were relevant. The only question is whether the probative value of the testimony is outweighed by the harm or prejudice to appellant. Since the questions were set forth in their proper context, interrogation of a suspected child abuser, we conclude that a rational jury would understand that law enforcement officers use many techniques to secure confessions and that the methods used here were indicative of that.
Thus, we conclude first that the questions were not hearsay and, second, that any error in admitting them is harmless.
Appellant argues next that the court should not have admitted evidence of his prior abuse of Jonathan because it was not relevant and was extremely prejudicial. We disagree.
The trial court allowed the evidence under Heuring v. State, 513 So.2d 122 (Fla. 1987), finding that the "familial context" exception created by Heuring for child sexual battery cases should apply to child abuse cases as well. See State v. Everette, 532 So.2d 1124 (Fla. 3d DCA 1988); Mayberry v. State, 430 So.2d 908 (Fla. 3d DCA 1982).
Everette and Mayberry held that evidence of the prior bad acts is admissible to show criminal intent, motive, common scheme or absence of mistake. The Everette court stated: "We believe in a child abuse case that reference to prior injuries to the child should be permitted, particularly when compared to the appropriateness of similar evidence in sexual child abuse cases." 532 So.2d at 1125.
Although appellant argues that the evidence of his prior abuse of Jonathan is not probative because in none of those instances did he hit Jonathan in the head, the fact that appellant had abused Jonathan is proof in itself of appellant's criminal intent and the absence of mistake. The absence of mistake was particularly important here because appellant argued that Jonathan's injuries were the result of an accidental fall that had occurred several days before Jonathan's death. Appellant's intent was also critical, as discussed above. In view of the fact that the prior abuse involved the same child that appellant was charged with killing, we believe that evidence of appellant's prior abusive acts towards Jonathan were properly admitted. See also Wooten v. State, 398 So.2d 963 (Fla. 4th DCA 1981), rev. dismissed, 407 So.2d 1107 (Fla. 1981).
*584 Appellant next argues that the prosecutor's reference during his opening statement to the fact that appellant had been indicted by a grand jury and that an arrest warrant had been issued by a judge was so prejudicial that the court should have granted him a mistrial. Appellant also argues that the prosecutor's statement during closing referring to "your child ... unconscious lying in the tub" was also grounds for a mistrial. We disagree.
Although appellant maintains that the prosecutor's opening statement is similar to those in Harris v. State, 570 So.2d 397 (Fla. 3d DCA 1990) and Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984), rev. denied, 462 So.2d 1108 (Fla. 1985), we disagree. In Ryan, the prosecutor's statements went far beyond what the prosecutor said here. In addition to arguing that the state would not have wasted its time on the charges if they were not valid, the prosecutor in Ryan repeatedly referred to the defendant's wealth, derided appellant's attorney and commented on appellant's failure to testify. The Ryan court quoted the Florida Supreme Court's opinion in State v. Murray, 443 So.2d 955, 956 (Fla. 1984):
[P]rosecutorial error alone does not warrant automatic reversal of a conviction unless the errors involved are so basic to a fair trial that they can never be treated as harmless. The correct standard of appellate review is whether "the error committed was so prejudicial as to vitiate the entire trial." Cobb, [v. State], 376 So.2d 230 at 232 [(Fla. 1979)]. The appropriate test for whether the error is prejudicial is the "harmless error" rule set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and its progeny. We agree with the recent analysis of the Court in United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The supervisory power of the appellate court to reverse a conviction is inappropriate as a remedy when the error is harmless; prosecutorial misconduct or indifference to judicial admonitions is the proper subject of bar disciplinary action. Reversal of the conviction is a separate matter; it is the duty of appellate courts to consider the record as a whole and to ignore harmless error, including most constitutional violations.
457 So.2d at 1086-1087
We believe that the opening statement error here was not so prejudicial as to vitiate the entire trial and was, therefore, harmless.
Although appellant argues that the prosecutor's reference to "your child" is a "golden rule" argument, we disagree. A "golden rule" argument is generally a prosecutor's argument to the jury that places the jury in the shoes of the victim, not the defendant. Bertolotti v. State, 476 So.2d 130 (Fla. 1985); Clark v. State, 553 So.2d 240 (Fla. 3d DCA 1989); Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980); Lucas v. State, 335 So.2d 566 (Fla. 1st DCA 1976). Although a prosecutor's argument placing jurors in the vicinity of the murder was found in Rhodes v. State, 547 So.2d 1201 (Fla. 1989) to be similar to a "golden rule" argument, the court there found that the comment alone would not warrant a new sentencing proceeding. It was only when it was combined with several other improper prosecutorial comments that the court considered it egregious enough to have influenced the verdict, requiring a new sentencing hearing.
In view of the limited nature of the prosecutor's statements here, we conclude that they did not influence the verdict and that appellant's convictions should be affirmed. In this regard, it must be observed that although appellant objected to these remarks, defense counsel specifically declined the trial court's offer of a curative instruction.
Appellant's convictions and sentences are affirmed.
DANAHY, A.C.J., concurs.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
I concur in the result in this case and fully recognize the state's need to vigorously *585 prosecute cases of child abuse. Nevertheless, I am troubled by the growing practice of introducing extensive evidence to prove that a defendant, charged with first-degree murder of a child, was sometimes a bad or unfit parent prior to the time of the child's death. Even when this evidence falls short of becoming an impermissible "feature" of the trial, the risk seems great that the prejudicial effect of such evidence will outweigh its probative effect. See generally Turtle v. State, 600 So.2d 1214 (Fla. 1st DCA 1992) (discussing strict standards for admissibility of collateral bad acts). This risk seems even greater when the state's case is primarily supported by circumstantial evidence. Although trial courts have discretion to admit this type of evidence, justice may be better served if that discretion is sparingly exercised.
It is noteworthy that Heuring v. State, 513 So.2d 122 (Fla. 1987), involved evidence of very similar sexual abuse of another child by the defendant twenty years before the charged offense. This case and many other child abuse cases involve evidence of somewhat dissimilar physical abuse of the same child by the defendant in the months or years preceding the fatal event. The risks of confusion and prejudice seem greater concerning evidence of dissimilar abuse of the same child.
In this case, there was evidence that the father had bruised his child's buttocks by spanking, that he had grabbed him by the arm and thrown him into the crib, that he had put a shirt into the child's mouth when the child was crying, that he had kicked the child's walker four feet across the room while the child was in the walker, and that he had cursed at the child. Under section 827.04, Florida Statutes (1987), these events could have justified misdemeanor or lesser felony charges. The state, however, did not charge the defendant with these lesser crimes. Instead, it used the evidence of these events to convict the defendant of a capital offense. I recognize the modest probative value of this evidence and the state's desire to introduce such evidence when a capital offense is supported primarily by circumstantial evidence. Nevertheless, I would feel more confident about the jury's verdict if it had been reached without the influence of at least some of this evidence.
I hope that every jury has sufficient objectivity to overlook the great emotional impact of such evidence and to determine, beyond a reasonable doubt, whether the defendant is guilty of first-degree murder arising out of a specific event. I believe the jury in this case had such objectivity. I fear, however, that on rare occasion a jury may convict a defendant of the nonexistent "capital offense" of chronic bad parenting if we continue to permit the extensive use of this type of evidence.