SWANSON, J.
Sedecki Pierre Toler (“appellant”) was found guilty by a jury of attempted sec *915 ond-degree murder with a firearm, robbery with a firearm, and carjacking with a firearm. In that same special interrogatory verdict, the jury also found appellant actually “possessed” a firearm, “carried, displayed, used, threatened to use, or attempted to use,” a firearm, and, in fact, “discharged” a firearm during the course of the commission of the crimes. Judgment was entered in accordance with the jury’s verdict and appellant was sentenced to concurrent twenty-five-year prison terms on each count, along -with a twenty-year minimum mandatory sentence in accordance with section 775.087(2)(a)2., Florida Statutes (2009), for discharging the firearm during the commission of the felonies. On appeal, he argues for reversal of his judgment and sentences, raising four points. We affirm Points I, II, and IV without further comment. Point III, however, raises a meritorious argument entitling appellant to a new trial due to prose-cutorial misconduct based on improper comments made during closing arguments.
Concerning the events that took place on June 27, 2010, the date on which the crimes allegedly occurred, the testimony and evidence adduced at trial established a violent struggle took place at the home of Michael Brown, resulting in bruising and a “graze” injury to Brown’s head. The events leading up to this struggle, along with the identity of the aggressor allegedly in possession of the gun, were issues hotly disputed at trial. According to Brown, appellant approached him while he was outside standing by his Jeep Cherokee, asked him for water, and then ushered him into his home at gunpoint while holding a bottle of soda in his other hand. Appellant demanded that Brown give him all of his money. Once they reached the kitchen, Brown leaned down and reached into the refrigerator to get appellant a drink, heard a gunshot, and felt warmth on the back of his head. Brown looked up at appellant, who began swearing and threw a nearby deep fryer onto the floor. Brown gave him all the money he had, and appellant took his keys and began to walk out the door after ordering Brown to lie down on the floor. As appellant was leaving, Brown grabbed him and a struggle ensued during which appellant hit Brown on the forehead with the gun. Brown ran out of his house and across the street to a neighbor’s home, where the neighbor called 9-1-1 for assistance.
In contrast, appellant testified he did nothing with the intent to kill or otherwise harm Brown, and did not steal any money or other property from Brown. Instead, according to appellant, Brown drove past him while he was walking along the side of the road. Brown stopped, turned around, and approached appellant to ask for directions to a certain road. Appellant got into the Jeep and showed Brown where the road was, but Brown passed by the road and, instead, stopped at a convenience store to get them both a drink. Brown returned with a bottle of Sunkist for appellant, and then drove appellant back to his house. Appellant testified he was not armed with a firearm, and did not pull a gun on Brown as they were walking into the house. When they entered Brown’s home, they sat down on the couch and Brown turned on the television. Appellant asked if he could use the bathroom. When he came out, he found Brown in the kitchen “fixing some liquor.” He offered some to appellant, but appellant declined. Brown then propositioned appellant for sex in return for twenty dollars, touching him in a “sexual way.” When appellant rejected the offer, Brown became angry and the two began to struggle, at which point the deep fryer was knocked over. Appellant’s intention was to get Brown off of him. The struggle carried through to the living room, where appellant tried to *916 leave through the front door. Appellant testified Brown took a “Taser” from a pouch in his pocket and tried to use it on appellant. Appellant also saw a small firearm that came from Brown’s back pocket. After struggling together for approximately ten minutes, Brown left the house first, while appellant was still on the floor. There was grease and blood spatter on the floor along a path that led to the front door. Appellant saw Brown’s keys to the Jeep on the floor. He took them and drove away in the Jeep so that Brown would not be able to get in the vehicle and follow him had he instead fled on foot. Appellant denied taking the Jeep for his own use.
The Jeep was eventually recovered in a field near to where appellant lived. A Sunkist bottle was recovered from Brown’s kitchen bearing appellant’s DNA, as later confirmed through forensic analysis. The neighbor who placed the 9-1-1 call informed the operator that a guy had just robbed Brown, stolen his car, and that Brown was bleeding and needed an ambulance. When the police arrived, Brown was described as “hysterical” and told the responding officer that the robber had possessed a black revolver. The testimony from the interviewing investigator, however, was inconclusive as to whether the graze wound on the back of Brown’s head was caused by a gunshot. As to the bruised area on Brown’s forehead, the investigating officer commented that it “[i]t looked a little deeper than it would be if someone were punched,” and described the wound as if Brown had been “hit with some type of item, either a pot, a pan, a butt of a gun.” No gun, though, was ever found, and no bullets were recovered from the crime scene.
At the start of his closing argument, the prosecutor told the jury:
Mr. Brown wakes up every morning, but for the grace of God; that’s what he thinks, but for the grace of God. He feels he’s lucky to be alive because back on June 27, 2010, he came across evil. The kind of person who wanted to rob him and shoot him and kill him.
Defense counsel immediately objected to “the vilification of the defendant.” The trial court sustained the objection but declined to give a curative instruction. Later, the prosecutor directed his comments to the credibility of appellant’s testimony concerning his confrontation with Brown, exhorting the jury to accept the proposition that since his initial meeting with the investigator, appellant’s story had “been spiced up” and “amped up.” According to the prosecutor, “This is a person who is willing to lie to get out of trouble.... [I]f there wasn’t the physical evidence, you would be hearing a story about misidentifi-cation. You would be hearing a story about how all young black males look the same.” Defense counsel’s objection was overruled. The prosecutor continued:
There is [sic] only so many defenses that a person could have. I wasn’t there. Or well, if it was me, the other person is worse off. That’s what has happened now.
Can’t go with the story anymore of it wasn’t me, you go into character assassination. Michael Brown is a bad person. He’s gay. He likes young men. He basically uses prostitutes. He’s some sort of sexual deviant. I’m honestly surprised that you didn’t hear that he makes meth in his bathtub—
Again, defense counsel objected, and the trial court sustained the objection, striking the comment and instructing the jury to disregard the last statement. Defense counsel also informed the trial court he had “a motion,” to which the court replied they would “take up the motion later.” *917 Accordingly, at the close of the prosecutor’s comments, defense counsel moved for a mistrial, basing his argument “upon the highly inflammatory comment,” and stressing, “I mean, there’s both when he got in derogatory comments about the defendant, racial things that were not part — nothing in evidence. And I think it’s a mistrial, Judge.” Counsel continued:
Judge I would first point out that there is no allegation of an attempted rape at gunpoint. It was a struggle after a denial. But to say that the next thing you’re going to hear from defense counsel is that he was making meth at his house is totally ... inappropriate and has [sic] done nothing of the sort.... To say that is an indirect attack both on [appellant] and on myself, as a professional in this courtroom — it’s designed to undercut my credibility and make the argument that I make sounded [sic] less credible than they [sic] should be. There is nothing you can do to unring the bell, with all due respect, Your Hon- or.... [T]his is a very critical case. The stakes are high. There is a factual — very delicate factual balance. It’s not like we’re doing this in the face of obvious overwhelming evidence. I don’t think there is any instruction that can cure that, and I think it needs to be — we need to do it over.
The trial court denied the motion for mistrial. Appellant now argues that ruling was in error and the prosecutor’s comments were egregiously improper and deprived him of a fair trial. We agree.
The standard of appellate review of alleged prosecutorial misconduct is whether “ ‘the error was so prejudicial as to vitiate the entire trial.’ ” State v. Murray, 443 So.2d 955, 956 (Fla.1984) (quoting Cobb v. State, 376 So.2d 230, 232 (Fla. 1979)). See also Pacifico v. State, 642 So.2d 1178, 1184 (Fla. 1st DCA 1994) (same). In the case of prosecutorial misconduct in closing arguments, certain fundamental principals control. The statements “ ‘must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant.’ ” Smith v. State, 28 So.3d 838, 862 n. 15 (Fla.2009) (quoting Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985)). Rather, “[t]he purpose of closing argument is to present a review of the evidence and suggestions for drawing reasonable inferences from the evidence.” Fleurimond v. State, 10 So.3d 1140, 1148 (Fla. 3d DCA 2009). Accord Pierre v. State, 88 So.3d 354, 355, (Fla. 4th 2012) (“During closing argument, the prosecutor must confine argument to evidence in the record and not make arguments which cannot be reasonably inferred from the evidence.”). Further, “ ‘it is improper for a prosecutor to express a personal belief in the guilt of the accused, or in the veracity of the state’s witnesses.’ ” Pacifi-co, 642 So.2d at 1183-84 (quoting Jones v. State, 449 So.2d 313, 314 (Fla. 5th DCA), rev. denied, 456 So.2d 1182 (Fla.1984)). Significantly, in Pacifico, we cautioned that “[w]here the case against a defendant is weak or tenuous, a prosecutor’s contentions that the defendant is a liar could rarely, if ever, be construed as harmless error.” Id. at 1184 (citing Jones, 449 So.2d at 314-15). Nor can a prosecutor “engage in vituperative or pejorative characterizations of a defendant” or “needless sarcasm,” revealing that the prosecutor has “abandoned any semblance of professionalism.” Gore v. State, 719 So.2d 1197, 1201 (Fla.1998). Finally,
[i]t is impermissible for a prosecutor to comment in closing argument upon matters outside the record [and,] [b]y the same token, because a jury can be expected to attach considerable significance to a prosecutor’s expressions of personal beliefs, it is inappropriate for a *918 prosecutor to express his or her personal belief about any matter in issue.
Pacifico, 642 So.2d at 1184 (citations omitted).
In this case, the prosecutor’s references to appellant as being a liar, to appellant’s race, and to matters for which there was absolutely no support in the record, in a manner both pejorative and sarcastic — all of which formed the basis for appellant’s motion for mistrial — were so invasive and inflammatory, “it is questionable whether the jury could put aside the prosecutor’s character attacks, and decide the case based strictly upon the evidence.” Id. Thus, in situations “where witness credibility is the pivotal issue, inappropriate prosecutorial comment which might be considered harmless in another context, can become prejudicially harmful.” Id. (citing Hill v. State, 477 So.2d 553 (Fla.1985)). As we stressed in Bass v. State, 547 So.2d 680 (Fla. 1st DCA 1989), when the case presents “a two witness ‘swearing match’ where there is little or nothing to corroborate the testimony of the witnesses, witness credibility is pivotal and inappropriate prosecutorial comment which might be found to be harmless in another setting may become prejudicially harmful.” Id. at 682. Because the present case chiefly involved a conflict in the testimony between appellant and Michael Brown, the undeniably crucial issue “was the jurors’ perception of appellant’s credibility.” Pacifico, 642 So.2d at 1184.
We therefore consider it appropriate to reiterate the jurisprudential principle expressed in Pacifico that “[t]he cornerstone of our system of justice is the right of an accused to be judged fairly by a jury of his or her peers.” Id. at 1184-85. On the record before us, we conclude, as we did in Pacifico, that “the repetitious and egregious nature of the prosecutorial improprieties ... became such a feature of the trial as to deprive appellant of that fundamental right.” Id. at 1185. In this regard, the state cannot demonstrate “beyond a reasonable doubt” that the prosecutor’s comments impugning appellant and his defense “did not contribute to the verdict.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Consequently, we must reverse appellant’s conviction and remand for a new trial.
AFFIRMED, in part; REVERSED, in part; and REMANDED for a new trial.
DAVIS, and WETHERELL, JJ., concur.