CASANUEVA, Judge,
Concurring.
I concur with the decision in this case in all respects but write to join with the expressions of concern emanating from this court and others over the continuing use of improper prosecutorial closing arguments.
In this prosecution for attempted murder with a firearm and other serious and violent crimes, Assistant State Attorney Moody in closing argument physically reenacted an execution style shooting and stated to the jury:
I suggest to you that the evidence, the physical evidence at the scene, the condition of [the victim], the trajectory of the bullet into him tells us one thing, and that tells us that [the victim] was on his knees, begging for his life when that man, right there, took this gun and decided to end it. Cause the legs are underneath him. If you assume that [the victim] saw him coming and he went to lunge for him so that the angle is down, how do his legs get tucked up all the way underneath him? [The victim] was almost executed. Why he was almost executed, I still don’t know, and probably never will.
This argument is a most powerful presentation; it is, unfortunately, not supported by the trial record. When asked how he was shot, the victim testified:
A. I don’t recall coming in contact with him, but I know he came up and shot me.
Q. How did that happen?
A. I want to say that I was leaving. And I think the argument ensued throughout the — throughout my walk towards where I was going.
And at some point, I told him, you know, “Just get away from me.” And I believe he left right away, or easily.
I’m not sure what happened at that point, but as I recall, I was walking along a set of trees, or a set of bushes, and thinking to myself, “well, if he’s going to come back by me in the truck or car and shoot at me, then at least I can duck behind these.”
And then, at that point in my mind, he hollered out from behind. I turned around, and he shot me.
Q. When you turned around, did you actually see who shot you.
A. Doug Dunsizer... .After I was shot, he stood over me, like looking at me to make sure I was dead. I believe he kicked me a couple of times, and reached down towards my pockets or something, I was not sure. I closed my eyes to keep him from shooting me again.
The record clearly belies the prosecutor’s assertion that the victim was on his knees and begging for his life at the time of the shooting. A further review of the trial record does not provide either fact or *1094 opinion testimony to support the “execution style” shooting theory. Although it is proper for prosecutors to argue inferences that may reasonably be drawn from the evidence, see Bertolotti v. State, 476 So.2d 130 (Fla.1985), they have no license to argue fiction. A prosecutor is to strike hard, not foul, blows. See Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Arguing facts not in evidence is clearly improper. This is all the more regrettable in this ease as the victim’s testimony provides an ample basis for a powerful closing argument without resort to dramatic license.
A review of decisions of this court supports the conclusion that concerns over improper argument and suggestions to remedy this malady are not of recent origin. In a strong admonition, applicable here, Judge Blue stated:
Trial attorneys must avoid improper argument if the system is to work properly. If attorneys do not recognize improper argument, they should not be in a courtroom. If trial attorneys recognize improper argument and persist in its use, they should not be members of The Florida Bar.
Luce v. State, 642 So.2d 4, 4 (Fla. 2d DCA 1994) (Blue, J., concurring specially).
To combat the frequent problem of improper closing argument, Judge Altenbernd has proposed mandatory viewing of a continuing legal education videotape for both prosecutors and defense counsel. See Bell v. State, 723 So.2d 896 (Fla. 2d DCA 1998) (Altenbernd. J., concurring specially). I reiterate here my colleagues’ sentiments for the benefit of the trial bar.
After reviewing the entire record, I concluded that the comments did not cross the threshold of harmful error and so joined in this affirmance. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Despite this conclusion, I am troubled that counsel may assume that the DiGuilio standard is an implicit authorization to engage in improper argument, knowing that its shield will protect a conviction achieved by “foul blows.” Accordingly, I repeat Judge Fulmer’s caveat, writing for this court in Bell, that this “affirmance should not be construed as approval of the remarks made by the prosecutor.” Id.