476 So.2d 130 (1985)
Anthony BERTOLOTTI, Appellant,
v.
STATE of Florida, Appellee.
No. 65287.
Supreme Court of Florida.
August 15, 1985.
Rehearing Denied October 23, 1985.
*131 James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
We review Anthony Bertolotti's conviction of first-degree murder and death sentence pursuant to jurisdiction granted in article V, section 3(b)(1), Florida Constitution. We affirm both the conviction and the sentence.
Bertolotti was arrested for and charged with first-degree murder in the death of Carol Miller Ward. The victim's body was discovered in her home by her husband when he returned from work. She had been repeatedly stabbed with two knives; she was naked from the waist down and medical tests showed intercourse had taken place, though there was no evidence of physical trauma to the vaginal area; she had been strangled and beaten. The crime received extensive media coverage.
Bertolotti's girlfriend and apartmentmate, Sharon Griest, began to suspect his involvement in the crime because on the day of the murder he had come home early with blood-stained clothing. In his absence he also had acquired thirty dollars, the approximate amount stolen from the victim, which he claimed to have borrowed. When Bertolotti underwent a marked change of personality following the murder, Griest checked up on his story about the money and his whereabouts at the time of the murder. Finding the stories to be false, Griest called Crime Watch, a police-operated program which encourages private citizens to communicate information concerning crimes to the authorities in an informal and anonymous fashion. When information received through Crime Watch proves valuable to police, a reward is paid to the informant. Griest eventually received $1,000 for her tip.
Some time after Griest had made the initial call to Crime Watch, Bertolotti confessed to Griest that he had murdered Mrs. *132 Ward. After calling his mother in Atlanta, Bertolotti agreed to turn himself in soon. The following morning, Griest called her contact person in the police department. Bertolotti, who was unaware of Griest's communication with the police, left the motel room where he and Griest had spent the night before officers arrived. He was later arrested on a public sidewalk; the arrest was widely reported by the media.
Though given his Miranda warnings at all appropriate times, Bertolotti made two separate taped confessions, fifteen days apart. During a search of the apartment Bertolotti and Griest shared, authorized by Griest, police discovered the pants Bertolotti had worn the day of the murder. The pants were stained with blood which could not be typed but which was inconsistent with Bertolotti's blood type.
Bertolotti was convicted of first-degree murder. The jury recommended and the judge imposed the death penalty. The judge found in aggravation that Bertolotti had been previously convicted of three violent felonies, that the murder occurred during commission of a robbery, and that the murder was especially heinous, atrocious, and cruel. He found nothing in mitigation.
In this appeal, Bertolotti raised ten issues; this Court has addressed several of them previously and will not revisit them here. We also find on the record that there is no merit to appellant's challenge of the denial of his motion for change of venue or to the voluntariness of his confessions.
Appellant challenged the admissibility of the blood-stained clothing police found during the search Mrs. Griest authorized. The clothing was found in a common living area under the joint control of Griest and Bertolotti. Appellant contends that Griest's expectation and ultimate receipt of a $1,000 reward through Crime Watch made her, in effect, a police agent whose consent to the search was itself a state intrusion into his zone of privacy. We disagree. Clearly, the purpose of the Crime Watch program is to encourage and reward citizen cooperation with police criminal investigations. This is not a case in which the police have coerced cooperation, see, e.g., Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed. 797 (1968), nor is this a case in which the state has injected a police informant into an otherwise protected area or relationship see, e.g., United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). A community-wide, regularly advertised program which rewards any citizen who provides information useful to the police in their criminal investigations is not tantamount to recruiting police agents; the state should not be penalized in the use of information so obtained. Mrs. Griest's consent to the search was not vitiated by the possibility of financial reward. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
Appellant challenges several aspects of the penalty phase. His objection to the admission of certain evidence which may not have been admissible during the guilt phase does not rely on a claim of irrelevance or a lack of opportunity to rebut hearsay. Section 921.141, Florida Statutes (1981), provides, "Any such evidence [of aggravation or mitigation] which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." The evidence received was proper in a penalty proceeding.
Appellant's proposed jury instruction is subsumed in the standard jury instruction given at the close of the penalty phase. Refusing the requested instruction was not error.
Appellant's final challenge to the penalty proceeding is more troublesome. During closing arguments, the prosecutor clearly overstepped the bounds of proper argument on at least three occasions. At one point, he made a statement[1] "fairly *133 susceptible" of being interpreted as a comment on the defendant's exercise of his right to remain silent.
The context of these remarks is dispositive. The comment on the defendant's exercise of his right to remain silent in the face of the charges brought against him by the state violates the defendant's due process rights. The state is not allowed to use defendant's silence to raise an inference of guilt which would tend to relieve the state of some portion of its burden to prove defendant's guilt beyond a reasonable doubt. But where, as here, the determination of guilt has already been made, such comment does not call into question the fairness of the penalty phase trial as a whole. Nonetheless, the comment is improper because the exercise of legal rights must not be used to enhance statutory aggravating factors, see, e.g., Pope v. State, 441 So.2d 1073 (Fla. 1983).
Later, the prosecutor made an argument which is a variation on the proscribed Golden Rule argument,[2] inviting the jury to imagine the victim's final pain, terror and defenselessness. This violation has been addressed recently in Jennings v. State, 453 So.2d 1109 (Fla. 1984), vacated on other grounds, ___ U.S. ___, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985), but the prohibition of such remarks has long been the law of Florida. Barnes v. State, 58 So.2d 157 (Fla. 1951). Finally, the prosecutor urged the jury to consider the message its verdict would send to the community at large,[3] an obvious appeal to the emotions and fears of the jurors. These considerations are outside the scope of the jury's deliberation and their injection violates the prosecutor's duty to seek justice, not merely "win" a death recommendation. ABA Standards for Criminal Justice 3-5.8 (1980).
In State v. Murray, 443 So.2d 955 (Fla. 1984), this Court held that prosecutorial error alone does not warrant automatic reversal of a conviction. In the penalty phase of a murder trial, resulting in a recommendation which is advisory only, prosecutorial misconduct must be egregious indeed to warrant our vacating the sentence and remanding for a new penalty-phase trial. But see, Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). We do not find the misconduct here to be so outrageous as to taint the validity of the jury's recommendation in light of the evidence of aggravation presented.
Nonetheless, we are deeply distrubed as a Court by the continuing violations of prosecutorial duty, propriety and restraint. We have recently addressed incidents of prosecutorial misconduct in several death penalty cases. Bush v. State, 461 So.2d 936, 942 (Fla. 1984) (Ehrlich, J., specially concurring), Jennings; Teffeteller v. State. As a Court, we are constitutionally charged not only with appellate review but also "to regulate ... the discipline of persons admitted" to the practice of law. Art. V, § 15, Fla. Const. This Court considers this sort of prosecutorial misconduct, in the face of repeated admonitions against such overreaching, to be grounds for appropriate disciplinary proceedings. It ill becomes those who represent the state in the application of its lawful penalties to themselves ignore the precepts of their profession and their office. Nor may we encourage them to believe that so long as their misconduct can be characterized as "harmless error," it will be without repercussion. However, it is appropriate that individual professional misconduct not be punished at the citizens' expense, by reversal and mistrial, but at the attorney's expense, by professional *134 sanction. State v. Murray, 443 So.2d at 956.
The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.
Moreover, we commend to trial judges the vigilant exercise of their responsibility to insure a fair trial. Where, as here, prosecutorial misconduct is properly raised on objection, the judge should sustain the objection, give any curative instruction that may be proper and admonish the prosecutor and call to his attention his professional duty and standards of behavior.
Appellant's final issue questions the trial court's finding that the murder was especially heinous, atrocious and cruel. The evidence presented amply supports this finding.
We have reviewed the entire record of this case and find no error which would warrant reversal. The sentence imposed is proportional to that imposed on similar facts in other first-degree murders. The conviction of guilt and the sentence imposed are accordingly affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[1] PROSECUTOR: And he says he didn't rape her ... . But the evidence would show otherwise... . And what does he tell you? The man raped her. And yet he comes in here with the audacity to tell us, "I didn't have sex with her." (Emphasis supplied).
[2] PROSECUTOR: And if that's not heinous, atrocious and cruel, can anyone imagine more pain and any more anguish than this woman must have gone through in the last few minutes of her life, fighting for her life, no lawyers to beg for her life.
[3] PROSECUTOR: Anything less in this case would only confirm what we see running around on the bumper stickers of these cars, and that is that only the victim gets the death penalty.