# Third District Court of Appeal

## State of Florida

Opinion filed March 15, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D11-1979, 3D11-1754 & 3D11-1675
Lower Tribunal Nos. 10-20301E & 10-20301C

_____


**Daniel Scala,** Appellant,
**and Alan Weitz,** Appellant/Cross-Appellee,

vs.

**The State of Florida,**
Appellee/Cross-Appellant.


Appeals from the Circuit Court for Miami-Dade County, Darrin P. Gayles, Judge.

Richard C. Klugh, for appellants/cross-appellee.

Pamela Jo Bondi, Attorney General, and Shayne R. Burnham and Gabrielle Raemy Charest-Turken, Assistant Attorneys General, for appellee/cross-appellant.


Before SALTER, EMAS and LOGUE, JJ.

EMAS, J.

Appellants Daniel Scala and Alan Weitz appeal from their convictions, judgments and sentences for first-degree grand theft. The State of Florida cross-appeals the downward departure sentence imposed on Alan Weitz.

Appellants raise a number of claims in this appeal, including: errors allegedly made during jury selection, in evidentiary rulings by the trial court regarding central witness testimony and key exhibits, insufficiency of the evidence, and improper closing argument by the State. We need not belabor this opinion with a recitation of the lengthy history of these 2005 prosecutions and 2011 trial. Regrettably, the transcripts of the trial are, in numerous and substantial passages throughout the proceedings, inaccurate, incomplete, contradictory and indecipherable.

This appeal was formally stayed or otherwise delayed for more than four years as a result of the pervasive errors, omissions and inadequacies of the transcripts. During this four-year hiatus, the parties and the trial court attempted valiantly to reconstruct these portions of the record, without success. After several hearings on the matter, the trial court determined that there was no "means to reliably correct substantial defects in the trial and hearing transcripts" based upon "the extent and nature of the errors, the inability of the parties and the court reporting firm to locate the court reporter, the existence of equivalent errors and omissions in the court reporter's original notes such that no new transcript would

2

be different than the present version, and the passage of time that make any attempt to recall any substantial portion of the record unrealistic."

Upon our independent review, we conclude that appellants have met their burden of establishing that the transcripts contain pervasive and substantial errors, omissions, inconsistencies, and inaccuracies. We further conclude that appellants have demonstrated they are prejudiced by the inability to reconstruct portions of the transcripts that bear directly on the claims raised in this appeal. See Jones v. State, 923 So. 2d 486, 489 (Fla. 2006) (holding that, to be entitled to a new trial based upon the absence of an accurate and complete transcript, the defendant must "demonstrate that there is a basis for a claim that the missing transcript would reflect matters which prejudice the defendant"). The unintelligible condition of the relevant and necessary portions of the record precludes this court from providing adequate and meaningful review of appellants' claims, compelling us to reverse and remand for a new trial. Delap v. State, 350 So. 2d 462 (Fla. 1977); Murphy v. State, 789 So. 2d 1235 (Fla. 3d DCA 2001); Morgan v. State, 117 So. 3d 79 (Fla. 2d DCA 2013); Thomas v. State, 828 So. 2d 456 (Fla. 4th DCA 2002); Smith v. State, 801 So. 2d 198 (Fla. 4th DCA 2001); McKenzie v. State, 754 So. 2d 851 (Fla. 2d DCA 2000).

Because we are reversing and remanding this case for a new trial, we address some of the improper comments made by the State during its closing

3

argument, to ensure as best we can that such improper arguments are not repeated at a new trial. The most egregious of these improper comments included the following argument by the prosecutor in rebuttal:

> [PROSECUTOR]: You know there is an old saying among lawyers probably older than I am. When the facts are against you argue the law. When the law is against you argue the facts. When they are both against you blame the prosecutor.[1] The evidence in this case, the law in this case both clearly lead you, and your common since (sic) to the escapable (sic) conclusion that these defendants committed grand theft. The defendants want to talk about everything accept (sic) the evidence.
>
> **You know as a prosecutor I take an oath and have an obligation— affirmative obligation everyday I work. I work everyday I walk into court to only argue those things that I know are in good faith are (sic) true. The defense lawyers in this case didn't find themselves so bound.**

The highlighted paragraph of the prosecutor's closing argument is clearly improper, as it attacks and denigrates defense counsel, implying at the very least that defense counsel is not acting in good faith, and suggesting at the very worst

---

[1] In the interest of accuracy, the saying appears to originate from a collection of poems, stories and yarns by Carl Sandburg:

> "If the law is against you, talk about the evidence," said a battered barrister. "If the evidence is against you, talk about the law, and, since you ask me, if the law and the evidence are both against you, then pound on the table and yell like hell."

Carl Sandburg, The People, Yes at 181 (Harcourt Brace & Co., First Harvest Edition, 1990). It has long since been adapted and paraphrased in a variety of ways, but not reportedly in the manner utilized by the prosecutor in the instant case.

4

that defense counsel lied to the jury—and that defense counsel was free to do so because he is not bound by the same obligation and professional oath as the prosecutor. See, e.g., Evans v. State, 177 So. 3d 1219, 1237 (Fla. 2015) (condemning comments in which prosecutor ridiculed defense counsel's argument, telling the jury "only in a world populated by defense attorneys would that [argument] be true"); Owens Corning Fiberglas Corp. v. Morse, 653 So. 2d 409 (Fla. 3d DCA 1995) (holding derogatory comments attacking the integrity of opposing counsel improper); Sun Supermarkets, Inc. v. Fields, 568 So. 2d 480 (Fla. 3d DCA 1990) (reversing for new trial where counsel continuously argued to the jury that defense counsel had lied and had committed a fraud upon the court and jury); Jackson v. State, 421 So. 2d 15, 16 (Fla. 3d DCA 1982) (reversing for new trial based upon multiple personal attacks on defense counsel, culminating in prosecutor asking jury rhetorically: "Would you buy a used car from this guy?"); Ryan v. State, 457 So. 2d 1084 (Fla. 4th DCA 1984) (condemning closing arguments which, inter alia, described defense counsel as "hiding the ball," and arguing to the jury that defense counsel "is not being honest with you"); Briggs v. State, 455 So. 2d 519, 521 (Fla. 1st DCA 1984) (holding "verbal attacks on the personal integrity of opposing counsel . . . are wholly inconsistent with the prosecutor's role").

5

The State contends on appeal that this argument was an "invited comment" or "fair reply" to defense counsel's closing argument reference to the prosecutor as a "persecutor." We do not have the benefit of a complete transcript of the closing arguments. However, even if the defense had made such a comment, the prosecutor's response was nevertheless improper. The proper response would have been to contemporaneously object to the defense's characterization and request a curative instruction to the jury and an appropriate admonishment to defense counsel.[2] As Judge Sorondo explained in his concurring opinion in Fryer v. State, 693 So. 2d 1046, 1051 (Fla. 3d DCA 1997):

[2] Further, if defense counsel had indeed made such an improper characterization, the trial court itself was obligated to intercede, even in the absence of an objection. As Judge Schwartz lamented three decades ago:

> Perhaps more important is the broader jurisprudential issue which is raised by cases like this. In our view, it is no longer—if it ever was—acceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which parties may fight it out on unseemly terms of their own choosing, and then, on the ground that the loser has asked for what he received, obediently raise the hand of the one who emerges victorious. We demean ourselves and the system of justice we serve when we permit this to occur. In Schreier v. Parker, 415 So.2d 794, 795 (Fla. 3d DCA 1982), we gave notice that "[a]rguments in derogation of Fla. Bar Code Prof. Resp. EC 7–24, DR 7–106(C)(3), (4) will not be condoned in this court, nor should they be condoned by the trial court, even absent objection. Hillson v. Deeson, 383 So.2d 732 (Fla. 3d DCA 1980)."

Borden, Inc. v. Young, 479 So. 2d 850, 851-52 (Fla. 3d DCA 1985). See also Jackson, 421 So. 2d at 16 (and cases cited). Regrettably, to this day, attorneys persist in presenting patently improper arguments to the jury. See, e.g., Kaczmar v. State, No. SC13-2247 at *7 (Fla. January 31, 2017); Sampson v. State, No.

6

The doctrine of invited comment does not contemplate that a prosecutor will sit silently while defense counsel pursues an impermissible line of argument so that he or she can then pursue his or her own impermissible and highly prejudicial response. In order to avail himself of the doctrine of invited comment the prosecutor in this case was obligated to object to the improper comments as they were made so that the trial judge could impose timely restrictions on defense counsel. . . .

Had the prosecutor in this case objected to defense counsel's initial "I had a nightmare" comment, the trial judge could have sustained the objection and given a cautionary instruction to disregard the offensive comments and cautioned counsel about any further impermissible argument. . . . Just as defense counsel must object to improper comments of the prosecutor in order to preserve them for appellate review, Huff v. State, 437 So.2d 1087 (Fla.1983); Sanders v. State, 638 So.2d 569 (Fla. 3d DCA 1994); Adams v. State, 585 So.2d 1092 (Fla. 3d DCA 1991); Thompson v. State, 318 So.2d 549 (Fla. 4th DCA 1975), so must a prosecutor object to defense counsel's improper comments at trial in order to avail himself of the doctrine of invited comment.

The defense made a contemporaneous objection to the prosecutor's improper argument, properly preserving this error. Although, given our disposition on other grounds, we do not reach the issue of whether this argument independently requires a new trial, we note that a merits review would have been conducted under the standard of harmless error, placing upon the State the burden of establishing that there is no reasonable possibility that the error contributed to

---

3D15-1662 (Fla. 3d DCA March 15, 2017); Mora v. State, No. 3D15-1434 (Fla. 3d DCA Feb. 15, 2017); Burger King Corp. v. Lastre-Torres, 202 So. 3d 872 (Fla. 3d DCA 2016); City of Miami v. Kinser, 187 So. 3d 921 (Fla. 3d DCA 2016); Constant v. State, 139 So. 3d 479 (Fla. 3d DCA 2014); Jennings v. State, 124 So. 3d 257 (Fla. 3d DCA 2013) (Emas, J., concurring in part and dissenting in part).

the verdict. See State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986). We also note that the prosecutor compared appellants to bank robbers Bonnie and Clyde, and to Willy Sutton (described by the prosecutor as a "famous bank robber" in the 1920's and 1930's).[3] While these comments drew no objection from the defense, these hyperbolic arguments are improper and unnecessary to achieve the legitimate purpose of a closing argument:

> The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.

Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985).

---

[3] Additionally, the prosecutor told the jury, on at least two occasions, that the defense attorneys were "simply blowing smoke in your face." Such characterizations denigrate opposing counsel and are improper. See, e.g., Howard v. State, 152 So. 3d 825, 829 (Fla. 2d DCA 2014) (holding "comments that 'impugn the integrity or credibility of opposing counsel' are fundamental error by themselves" (quoting Wicklow v. State, 43 So. 3d 85, 88 (Fla. 4th DCA 2010)); Brown v. State, 733 So. 2d 1128 (Fla. 4th DCA 1999) (holding prosecutor's ridiculing defendant's theory of defense as a "smoke screen" improper); Olbek v. Kraut, 650 So. 2d 1138, 1138 (Fla. 5th DCA 1995)(Griffin, J., concurring)(condemning comment characterizing opposing counsel's arguments as "smoke and mirrors"); Redish v. State, 525 So. 2d 928 (Fla. 1st DCA 1988) (holding prosecutor's reference in closing argument to defense counsel's "cheap tricks" was beyond bounds of proper closing argument); Waters v. State, 486 So. 2d 614 (Fla. 5th DCA 1986) (holding repeated references to defense's closing argument as "misleading" and "a smoke screen" were improper). But see Ham v. State, 580 So. 2d 868 (Fla. 3d DCA 1991) (holding that, when read in full context, "smoke screen" comment by prosecutor was not a denigration of the defense, and, even assuming it was improper, was harmless error.)

We do not seek to temper the prosecutor's evident zeal, but only to ensure that such zeal is confined to the clear boundaries demarked by the evidence, the reasonable inferences therefrom, and the law applicable to the case. See Murphy v. Intern. Robotic Sys., Inc., 766 So. 2d 1010, 1029 (Fla. 2000) (observing that the case law and the rules of professional conduct are "in place to ensure that juries render verdicts based on record evidence and applicable law, not based on impermissible matters interjected by counsel during closing argument.") See also R. Regulating Fla. Bar 4-3.4(e) (providing: "A lawyer must not: . . . e) in trial, state a personal opinion about the credibility of a witness unless the statement is authorized by current rule or case law, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the culpability of a civil litigant, or the guilt or innocence of an accused.") As the United States Supreme Court observed more than 80 years ago, a prosecutor

> is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain

9

> from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88 (1935) (emphasis added).

We decline to reach the other arguments raised by appellants and, given our disposition of the appeal, we dismiss the State's cross-appeal as moot.

Reversed and remanded for new trial. Cross-appeal dismissed as moot.