# Third District Court of Appeal

**State of Florida**

Opinion filed November 28, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-383
Lower Tribunal No. 13-18474
_____

**Derek Vernon Medina,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Yvonne Colodny, Judge.

Jones Walker, LLP and Edward R. Shohat, Jon A. May and Melissa A. Campbell, for appellant.

Pamela Jo Bondi, Attorney General, and Gabrielle Raemy Charest-Turken, Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and EMAS and LUCK, JJ.

PER CURIAM.

Appellant Derek Vernon Medina appeals his convictions and sentences for second-degree murder of his wife, Jennifer Alfonso; shooting or throwing a deadly missile; and child neglect. Appellant contends that the trial court erred in: (1) excluding defense expert testimony regarding battered spouse syndrome; (2) excluding evidence regarding the discovery of certain drugs in a drawer of the home where appellant shot and killed the decedent; (3) excluding defense expert testimony regarding "shadow analysis" purportedly to establish the decedent's position when she was shot by appellant; (4) admitting a video of appellant boxing; and (5) denying appellant's motion for disqualification of the trial judge. In his sixth and final claim, appellant asserts that the prosecutor's closing argument improperly expressed personal beliefs regarding whether the decedent was the aggressor, resulting in fundamental error. We affirm, and address several of the claims raised by appellant.

First, we hold that the trial court properly excluded appellant's proffered expert testimony regarding battered spouse syndrome, as it was not predicated upon facts in evidence, but instead upon hearsay evidence deemed inadmissible by the trial court. See State v. Hickson, 630 So. 2d 172, 176 (Fla. 1993) (holding that expert testimony on battered spouse syndrome permits an expert to provide the trier of fact "information beyond the understanding of the average layman" and to answer hypothetical questions "predicated on facts in evidence") (emphasis added). Importantly, the trial court did

2

not unconditionally prohibit the expert from testifying. Instead, and consistent with <u>Hickson</u>, the trial court ruled that it would permit the expert to testify in order to educate the jury about battered spouse syndrome and to answer certain hypothetical questions, if the defense established the proper predicate for such testimony. Because appellant chose not to testify, was not examined by the defense expert, and introduced no evidence to demonstrate that he suffered any cycle of battering by the decedent, the necessary predicate was not established and the trial court properly excluded the expert's proposed testimony.[1]

---

[1] Appellant contends that certain statements made by the decedent to third persons (to establish this requisite predicate) should have been deemed admissible as statements against penal interest under section 90.804(2)(c), Florida Statutes (2013). However, this basis for admissibility was not raised below and, in the absence of fundamental error, is not properly preserved for our review. <u>See</u> <u>Steinhorst v. State</u>, 412 So. 2d 332 (Fla. 1982); <u>Seaman v. State</u>, 608 So. 2d 71 (Fla. 3d DCA 1992); <u>Carabella v. State</u>, 727 So. 2d 270 (Fla. 4th DCA 1999). Even if this issue had been properly preserved, it is without merit. While it is true that a statement against penal interest is admissible if the declarant (here, the decedent) is "unavailable" as a witness—which is defined to include a declarant who is "unable to be present or to testify at the hearing because of death," <u>see</u> § 90.804(1)(d)—it is subject to the following exception: "However, a declarant is not unavailable as a witness if such . . . inability to be present . . . is due to the procurement or wrongdoing of the party who is the proponent of his or her statement in preventing the witness from attending or testifying." § 90.804(1)(e). <u>See</u> <u>State v. Villarreal</u>, 990 So. 2d 1166 (Fla. 3d DCA 2008). And on the merits, we find no abuse of discretion in the trial court's determination that these statements did not qualify as statements against penal interest. <u>See generally</u> <u>Masaka v. State</u>, 4 So. 3d 1274 (Fla. 2d DCA 2009).

Appellant further contends that the exclusion of this evidence denied him his constitutional right to present a defense, citing <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973). To the extent that this claim was properly preserved below, we are unpersuaded that the trial court's evidentiary rulings resulted in a deprivation of appellant's sixth amendment right to present a defense. As <u>Chambers</u> itself

Next, we hold that the trial court properly excluded evidence that, two months after the shooting, a bottle containing Alpha-PVP[2] pills was found by a defense investigator in a drawer near the kitchen where the shooting occurred. The defense proffered this as evidence that the decedent was under the influence of these drugs on the day of the crime, causing her to be the aggressor. In support of appellant's contention, defense counsel offered a video depicting the decedent opening the same drawer on the day of the killing. However, the video did not show the decedent removing anything from the drawer, and no evidence was presented that the decedent had ingested, or was under the influence of, drugs on the day of the crime.[3] The trial court determined that the discovery of these pills

---

acknowledged: "In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." Id. at 302. See also Jones v. State, 709 So. 2d 512, 524-25 (Fla. 1998) (noting that that the "Supreme Court stated in Chambers that it was establishing no new standards of constitutional law, nor was it diminishing the authority of the states over their own trial rules"). In Montana v. Egelhoff, 518 U.S. 37, 52-53 (1996), the Court clarified the limited contours of Chambers' holding, noting that Chambers was "an exercise in highly case-specific error correction" and that "the holding of Chambers—if one can be discerned from such a fact-intensive case—is certainly not that a defendant is denied 'a fair opportunity to defend against the State's accusations' whenever 'critical evidence' favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation." (quoting Chambers, 410 U.S. at 294, 302). See also Taylor v. Illinois, 484 U.S. 400, 410 (1988) (observing that a defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.")

[2] Appellant represented that Alpha-PVP is one of a class of drugs commonly referred to as "bath salts" and proffered that an expert would testify such a drug may cause its user to act in an aggressive manner.

4

(two months after the crime) was too remote in time given that many people had unfettered access to the home during the intervening time period, and concluded that the presence of these drugs was not sufficiently linked to the decedent or to the actions of the decedent on the day of the murder, and thus, was not relevant. The trial court also found that no evidence was presented that appellant was aware that the decedent was taking or under the influence of such drugs on the day of the crime. We find no abuse of discretion in the trial court's decision not to admit this evidence. See Kopsho v. State, 84 So. 3d 204 (Fla. 2012); Street v. State, 636 So. 2d 1297 (Fla. 1994); Cooper v. State, 778 So. 2d 542 (Fla. 3d DCA 2001); Gartner v. State, 118 So. 3d 273 (Fla. 5th DCA 2013). See also Munoz v. State, 45 So. 3d 954 (Fla. 3d DCA 2010).

In addition, we hold that the trial court did not err in excluding defense expert testimony regarding "shadow analysis" performed of the crime scene. The State filed a motion in limine, seeking to exclude this evidence, and both parties requested that the trial court, in determining whether the expert testimony was admissible, apply the test set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and section 90.702, Florida Statutes (2013). The trial court did so, and excluded the testimony upon a finding that it failed to meet the Daubert standard for admissibility of expert testimony. Appellant does not contend here

---

[3] Following discovery of these pills, a drug screen performed on the decedent's blood revealed no evidence of Alpha-PVP.

that the trial court erred in not applying the Frye[4] test, nor could it do so in light of

the joint request that the trial court apply Daubert to determine admissibility of this

testimony.[5]  On the merits, we find the trial court committed no error in its analysis

or in its exclusion of the proposed expert testimony. See Daubert, 509 U.S. at 593-

94 (articulating some relevant factors a trial court may consider in determining the

admissibility of expert testimony, including: (1) whether the scientific theory or

technique has been tested; (2) whether the scientific theory or technique has been

subjected to peer review and publication; (3) whether there is a known or potential

rate of error; (4) the existence of any standards controlling the technique's

operation; and (5) whether the theory or technique is generally accepted within the

relevant scientific community); Kumho Tire v. Carmichael, 526 U.S. 137, 152

(1999) (observing that the objective of the trial court's "gatekeeping" function, as

---

[4] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).  At the time of the trial, there remained an open question whether Florida courts were required to continue to follow the Frye standard or whether they should apply the Daubert standard, adopted by the Florida Legislature in 2013.  See ch. 2013-107, Laws of Fla.  The Florida Supreme Court approved this statutory change only to the extent it was procedural, but did not directly answer the question of whether such evidentiary determinations are substantive or procedural.  See In re Amendments to Fla. Evidence Code, 210 So. 3d 1231, 1239 (Fla. 2017).  During the pendency of the instant appeal, the Florida Supreme Court answered this question in Delisle v. Crane Co., 43 Fla. L. Weekly S459 (Fla. October 15, 2018), holding that section 90.702, as amended in 2013, is procedural and not substantive, and "reaffirm[ing] that Frye, not Daubert, is the appropriate test in Florida courts."  Id. at *19.
[5] Any error in this regard would have been invited by appellant.  See Czubak v. State, 570 So. 2d 925, 928 (Fla. 1990)(explaining that, under the "invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal").

6

required by Daubert, "is to ensure the reliability and relevancy of expert testimony" and "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field;" and concluding "that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.")

Finally, we hold that the prosecutor's closing argument did not constitute an improper expression of personal belief or suggest he was aware of the existence of other evidence not presented at trial. Rather, read in context, the prosecutor was simply offering argument in reply to the defense's closing argument, which postulated that if the decedent had armed herself with a knife before appellant threatened her with a gun, she was justified in doing so under the circumstances.[6]

---

[6] Prior to this comment by the prosecutor, defense counsel made the following comment in his closing argument to the jury: "Let me tell you what I think happened. I think [the decedent] had the knife." (Emphasis added.). In reply to this very argument, the prosecutor argued: "Well, you know what I say, if that's true good for her, good for her, because the person who was threatened with imminent death at that moment was [the decedent] when her husband walked up on her, minding her own business, waving a gun at her face." (Emphasis added). While it is unlikely either of these arguments will serve as an example of "best practices," we conclude that, read in context, neither of these statements by counsel rose to the level of harmful error. At most, the phrases used were figures of speech intended not to express a personal belief or suggest the existence of other evidence not presented to the jury, but simply as an effort to argue, from their respective points of view, what each attorney thought the jury should find was established by the evidence presented and inferences from that evidence. See Lowder v. Econ. Opportunity Family Health Center Inc., 680 So. 2d 1133 (Fla. 3d DCA 1996);

See <u>Lot v. State</u>, 13 So. 3d 1121 (Fla. 3d DCA 2009). Further, appellant made no contemporaneous objection to the prosecutor's argument, failing to preserve the issue for appeal. See <u>McDonald v. State</u>, 743 So. 2d 501, 505 (Fla. 1999); <u>Sampson v. State</u>, 213 So. 3d 1090 (Fla. 3d DCA 2017). Under such circumstances, we may review the claim only for fundamental error, and we find no such error here. See <u>id.</u> at 1092. See also <u>State v. Delva</u>, 575 So. 2d 643, 644-45 (Fla. 1991) (holding: "To justify not imposing the contemporaneous objection rule, 'the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.' ") (quoting <u>Brown v. State</u>, 124 So. 2d 481, 484 (Fla. 1960)).[7]

Affirmed.


**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS THEREAFTER.**

---

<u>Forman v. Wallshein</u>, 671 So. 2d 872 (Fla. 3d DCA 1996).

[7] We affirm without further discussion the other issues raised by appellant.