# Third District Court of Appeal

## State of Florida

Opinion filed July 27, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2005
Lower Tribunal No. F13-11975
_____

**Anthony Sampson,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal under Florida Rule of Appellate Procedure 9.141(b)(2) from the Circuit Court for Miami-Dade County, Teresa Mary Pooler, Judge.

Anthony Sampson, in proper person.

Ashley Moody, Attorney General, and Magaly Rodriguez, Assistant Attorney General, for appellee.

Before EMAS, SCALES and BOKOR, JJ.

BOKOR, J.

Anthony Sampson appeals the denial of a motion to correct an illegal sentence under rule 3.800, Florida Rules of Criminal Procedure.[1] Sampson alleges that the trial court's use of an incorrect sentencing scoresheet resulted in his receiving a higher sentence than he would have received under the appropriate sentencing guidelines at the time of the offenses. The State concedes that the scoresheet was incorrect, but nonetheless contends that the error is harmless because the sentence was within the statutory maximum that the trial court could have imposed upon making findings to justify an upward departure from the guidelines sentence. Because the court did not make such findings, and because we cannot conclude from the record that the trial court would have done so but for its reliance on the improper scoresheet, we vacate the sentence and remand for a new sentencing proceeding.

Sampson was convicted of second-degree murder, armed robbery, and grand theft based on acts committed on May 12–13, 1997. During his sentencing, the trial court calculated Sampson's sentencing scoresheet pursuant to the Florida Criminal Punishment Code guidelines and concluded that the minimum permissible sentence was 379.35 months incarceration.

---

[1] Our review is de novo. See, e.g., Jimenez v. State, 265 So. 3d 462, 476 n.10 (Fla. 2018).

Due to Sampson's lengthy criminal history and the violent nature of the offenses, the court sentenced him to life for the murder charge, 75 years for the robbery, and 5 years for the grand theft, to run concurrently. This court affirmed on direct appeal. Sampson v. State, 213 So. 3d 1090 (Fla. 3d DCA 2017).

Subsequently, Sampson brought a motion for postconviction relief, arguing in pertinent part that his sentence was illegal due to the trial court's failure to properly impose the 1994 revised sentencing guidelines, which would have resulted in a sentence range of 218.55 to 364.25 months incarceration. The trial court denied the motion on the basis that the sentences were not illegal because they fell below the statutory maximum for each charge.[2] This appeal followed.

Sampson correctly notes, and the State doesn't dispute, that the trial court should have applied the 1994 revised sentencing guidelines instead of

---

[2] See § 782.04(2), Fla. Stat. (1997) (classifying second-degree murder as first-degree felony punishable by life when committed with the use of a deadly weapon); § 775.087(1)(a), Fla. Stat. (1997) (enhancing first-degree felonies in which firearm usage is not an essential element to life felonies when firearm is used, carried, or threatened, except where otherwise provided by law); § 812.13(2)(a), Fla. Stat. (1997) (classifying armed robbery with a firearm as first-degree felony punishable by life); § 812.014(2)(c), Fla. Stat. (1997) (classifying grand theft as third-degree felony); § 775.082(3), Fla. Stat. (1997) (providing third-degree felonies punishable by up to five years' incarceration).

the Criminal Punishment Code for the offenses committed in 1997. See §

921.001(4)(b)2., Fla. Stat. (1997) ("The 1994 guidelines apply to sentencing

for all felonies, except capital felonies, committed on or after January 1,

1994."); § 921.0022, Fla. Stat. (1997) (providing that Criminal Punishment

Code scoresheet is "[e]ffective October 1, 1998"). The fact that Sampson's

sentence fell below the statutory maximum doesn't end the inquiry here.

See, e.g., Parks v. State, 697 So. 2d 964 (Fla. 1st DCA 1997) ("Use of the

wrong scoresheet is akin to an incorrect scoresheet calculation which is

cognizable under Florida Rule of Criminal Procedure 3.800(a)."); Jackson v.

State, 983 So. 2d 562, 572 (Fla. 2008) (recognizing "that the scoresheet was

inaccurate" as a "sentencing error" for purposes of Rule 3.800).

While the trial court could legally impose the sentence given to

Sampson, it could do so only upon additional written findings. Under the

1994 guidelines, a trial court may only apply a sentence within 25% of the

median recommended guidelines range, absent written findings reasonably

justifying a departure from such a range. See § 921.001(5)–(6), Fla. Stat.

(1997) (requiring sentence under 1994 guidelines to be within guidelines

range "unless there is a departure sentence with written findings" that is

"based upon circumstances or factors which reasonably justify the

aggravation or mitigation of the sentence"); Fla. R. Crim. P. 3.703(d)(30)(B)

(requiring written statement justifying departure sentence to be included in the record); § 921.0014(2), Fla. Stat. (1997) ("The recommended sentence length in state prison months may be increased by up to, and including, 25 percent . . . at the discretion of the court."); § 921.0024(2), Fla. Stat. (1997) (allowing trial court to impose any sentence up to statutory maximum under Criminal Punishment Code); see also Mays v. State, 717 So. 2d 515, 515–16 (Fla. 1998) (explaining process of guidelines sentencing).

Sampson's sentence of life plus 75 years exceeds the maximum of 364.25 months he could have received under the 1994 guidelines absent a departure. Accordingly, the trial court was required to make written findings. The State claims that the court's failure to make such findings was harmless here because the record is replete with evidence to support such a departure. See Rubin v. State, 734 So. 2d 1089, 1090 (Fla. 3d DCA 1999) ("[W]here it is clear that the trial court would have imposed the departure sentence notwithstanding the scoresheet error and there are valid reasons for the departure sentence, we affirm."). But Rubin arises from a different factual posture. In Rubin, the court explained in detail that, notwithstanding the error in the appellant's point total, such effort was harmless based on the record evidence *cited by the trial court* to justify its departure sentence. Id. at 1089–90. Here, we take no position on the ultimate merits of an upward

5

departure. But, unlike <u>Rubin</u>, the lack of record evidence cited by the trial court prevents us from finding harmless error. In a case more analogous to the facts here, our sister court explained that absent a clear intent to impose a sentence notwithstanding a scoresheet error (such as in <u>Rubin</u>), the proper remedy requires remand to allow the trial court "to provide proof that the sentencing guidelines scoresheet error did not affect [the defendant's] sentence or to re-sentence him with a corrected scoresheet." <u>Knowles v. State</u>, 791 So. 2d 534, 535 (Fla. 4th DCA 2001).

The lack of specific findings from the trial court justifying the departure of greater than 25% precludes us from finding harmless error under the applicable sentencing guidelines. Thus, we vacate the sentence and remand for a new sentencing hearing, resentencing, and further proceedings. Sampson and his counsel shall be present at the new sentencing hearing and the resentencing.

Reversed and remanded.